# CASES ARGUED AND DECIDED

IN THE

# SUPREME COURT OF MISSISSIPPI

AT THE

## OCTOBER TERM, 1879.

### ALFRED JOHNSON v. THOMAS J. FUTCH.

1. COUNTY TAX. *Levy. Board of supervisors. Place of meeting.*
    The levy of the taxes of Hinds County for the year 1875 was void, because not made at a place where the board of supervisors was authorized by law to hold its sessions.

2. SAME. *Ejectment. Void tax deed. Color of title.*
    A deed from the State, based on a sale for the taxes so levied, is void ; and, to recover the land, the vendee of the former owner thereof, for whose taxes it was sold, is not compelled to trace title independently of a common source.

3. EJECTMENT *Mesne profits. Partial improvements.*
    In ejectment for a tract of land, only a portion of which the defendant has improved, the jury, in assessing mesne profits and the value of improvements, may deal with the entire tract together, although the defendant claims the improved part under a separate conveyance.

4. SAME. *Value of improvements. How assessed.*
    The value of improvements should be assessed on a basis coextensive in time with the estimate of rents and profits which they contributed to produce, so as to allow the defendant for all his improvements of which the plaintiff recovers the benefit.

5. LANDLORD AND TENANT. *Lease from stranger. Payment of rent.*
    A lessee from the vendor of land does not, by paying the rent to the vendor, relieve himself from liability therefor to the vendee.

ERROR to the Circuit Court of Hinds County.

Hon. S. S. CALHOON, Judge.

In this ejectment by Thomas J. Futch for two hundred and forty acres of land and mesne profits, the defendant pleaded

"not guilty," with a claim for improvements on eighty acres of the land. The question of title was submitted to the court, which found for the plaintiff. The counter-claims for mesne profits and improvements were submitted to a jury, which assessed the former at five hundred, and the latter at five hundred and thirty dollars. The plaintiff, in open court, tendered the thirty dollars balance to the defendant, who declined to receive it, and the court gave judgment in the plaintiff's favor for possession of the land.

On the trial of the title, the plaintiff introduced a deed of trust by John A. Glover, recorded Aug. 17, 1872, with proof of a sale of the land thereunder, and the trustee's deed to himself. To show title from a common source, he then put in evidence a deed, dated Nov. 16, 1873, from John A. Glover to the defendant, conveying the eighty acres on which the latter made the improvements; proved that Glover had in 1875, 1876, and 1877, leased to the defendant the remaining one hundred and sixty acres; and rested his case. The defendant introduced a deed from the State to himself based on a sale for taxes in 1876 conveying the one hundred and sixty acres, and, it being admitted that the tax sales of lands in 1876 were made on proper days, introduced an abstract from the list of sales of lands in 1876 for non-payment of the taxes of 1875, which contained nothing but a description of this land, with the statement that it was redeemed, Nov. 16, 1877, by Alfred Johnson. The defendant then rested. The plaintiff introduced the order of the board of supervisors of Hinds County levying county taxes for the year 1875, which showed on its face that it was made at a regular meeting of the board held in Robinson & Steven's new building in the city of Jackson.

On the jury trial, the plaintiff proved that John A. Glover rented to the defendant ninety acres, being as much as he could cultivate of the larger tract of land, with the privilege of using the remainder, which was woodland; and that the defendant improved the tract of eighty acres, which was wild when he purchased from Glover, by clearing and fencing it, and erected a dwelling and other buildings thereon. The plaintiff then proposed to prove the rental value of the eighty acres with the improvements, to which the defendant objected,

contending that it should be without the improvements which the defendant, while holding as owner, put upon the land. But the evidence, which was to the effect that the land was worth nine dollars per annum with the improvements, and four dollars without them, was admitted, and the plaintiff rested. The defendant then offered to prove the cost of the improvements, when the court, on the plaintiff's objection, ruled that the question was, what was the value of the improvements at the time of the trial, and not their value at the commencement of the suit, nor their cost when made. The defendant also offered to show that he had paid John A. Glover rent for the hundred and sixty acres, from March 16, 1875, the date of the trustee's sale, to the trial, which was excluded by the court. After proving that he had improved the eighty acres, supposing it his land, without notice of an adverse claim, and introducing evidence tending to show that the rental value thereof was increased five dollars per acre by the improvements, which cost two thousand dollars, but were now, owing to use and decay, casual destruction and the general depreciation of property, worth only six hundred dollars, the defendant rested his case.

The court instructed the jury, for the plaintiff, to estimate the rental value of the eighty acres of land from March 16, 1875, to the date of the trial, with the improvements as they existed during that period, and the rental value of so much of the remaining land as the defendant leased from Glover for each year of the same period, and to assess the actual cash value, at the time of the trial, of such valuable and permanent improvements as the evidence showed were then on said land; that, in estimating the value of the improvements, they were confined to their present actual cash value, and were not to consider what they might have cost the defendant, or have been worth, when he put them upon the land. The court also refused to instruct the jury for the defendant to assess separately the rents of the eighty acres and of the one hundred and sixty acres, and have their verdict so to show.

*M. Dabney,* for the plaintiff in error, argued the case orally and in writing.

1. The title to the eighty acres of land is conceded to the

defendant in error, but the result in the lower court was wrong as to the improvements and rents. With respect to the title to the one hundred and sixty acres, however, a contest arises regarding the conveyance to Johnson from the State. Johnson was not tenant to Futch, and could therefore purchase and set up an outstanding title against him. *Wildy* v. *Doe*, 26 Miss. 35 ; *Bettison* v. *Budd*, 17 Ark. 546 ; *Ferguson* v. *Etter*, 21 Ark. 160 ; *Curtis* v. *Smith*, 42 Iowa, 665. There is no common source as to the larger tract, and the tax deed, even if void, is color of title, which, being admitted in evidence, was sufficient to put Futch on proof of his title from the government. *Moore* v. *Lord*, 50 Miss. 229; *Lum* v. *Reed*, 53 Miss. 73.

2. The law, by virtue of which improvements can be claimed on the trial in ejectment, Code 1871, § 1557, which also provides for the plaintiff's recovery of mesne profits, directs that the notice filed with the plea shall state the " character of the improvements and the value thereof." Value when ? If the value of the improvements is to be estimated as of the date of the trial, the rent should be assessed for the several years on the basis that the improvements were, during those years, in the condition in which they are when the trial takes place. It has been held that the rent should be assessed on the land without improvements. *Neale* v. *Hagthrop*, 3 Bland, 551; *Moore* v. *Cable*, 1 Johns. Ch. 385. The value of the improvements should have been estimated at least as of the time for which the rent was assessed. The improvements have depreciated by use, and it is fallacious to say that the defendant had the benefit of them, because the annual rental value of the land is based upon the improvements as they were during the several years.

3. The parcels of land sued for were separate and distinct. Improvements were claimed on the smaller tract only, and the lien in favor of the defendant for the excess of the improvements over the rents should have been on that land. Code 1871, § 1557. Johnson should have been allowed to pay the rent found due on the smaller parcel of land, and to take it for his improvements, while he abandoned the larger tract. The two bodies of land were held by different titles, and derived from distinct sources, and the rents of one parcel should not

have been applied to pay for the improvements on the other.

4. If Glover had sued Johnson for the rent before this suit was instituted, the latter could not have set up the defence that Futch had a better title.    *Wolf* v. *Johnson*, 30 Miss. 513. Johnson was discharged by payment of the rent on the larger tract to Glover, if the latter was Futch's tenant, and should have been permitted to prove that he had paid ; or he should not have been held to be a tenant of Glover, and, through him, of Futch, and therefore incompetent to buy a tax title.    Yet evidence that Johnson paid the rent to Glover was excluded, while it was held that he was Glover's tenant, in order to get rid of the conveyance from the State.

*S. M. Shelton*, for the defendant in error, made an oral argument and filed a brief.

1. The tax deed is not such color of title as to put Futch on proof of his title from the government.    The large parcel of land was purchased by the State as Glover's, and sold by the State to Johnson, who is thus estopped to deny Glover's title. Both parties to this suit, therefore, claim through a common source.    But Johnson's tax title is void, because the board of supervisors levied the tax for which the land was sold when not a legal body, because not in session at the county town where the law directed them to meet.    Moreover, when the defendant purchased from the State, he was Glover's tenant. He never surrendered possession to Glover, whose title Futch acquired at the sale under the deed of trust.    The fact that Glover rented to him after the trust sale makes no difference, because Glover after the sale was nothing more than Futch's tenant at sufferance.    Such a tenant cannot set up an outstanding title.    *Doe* v. *Parker*, 3 S. & M. 114 ; *Smith* v. *Otley*, 26 Miss. 291.

2. The defendant was entitled to the present value of the improvements, not the cost of putting them on the land ; and the plaintiff was entitled to compensation for the use of the land during the time that the defendant held it, including the improvements.    To permit the defendant to use the improvements until he has worn them out, and then get first cost for them, would be unjust.    The intent of the statute is to charge

the plaintiff with the enhanced value of his land, caused by the defendant's labor and expenditures. Under the statute, the defendant pleads " the value " not the cost, of the improvements, and the jury assess their " actual cash value." Code 1871, § 1557. The court below adopted the only equitable mode of adjusting the counter-claims for mesne profits and improvements.

3. The only object in endeavoring to have the rents of the two parcels of land separately assessed was to enable the plaintiff in error to pay for the improved land, and to compel Futch to take that which was unimproved. This was merely asking of the court a favor ; and, as the plaintiff in error shows no authority for the proceeding, it is useless to argue the question. The action is for a contiguous tract of two hundred and forty acres of land, and the fact that the defendant claims different parts under separate titles cannot alter the general rule.

4. The court rightly excluded the evidence of payment of rent to Glover. The plaintiff in error, having entered under Glover, by accepting a lease from him, and never having surrendered possession, could not deny his title so as to put Futch on proof thereof. But, in a controversy about rents, he could not, as against Futch, who had bought Glover's title, insist upon the tax title to prevent a recovery by Futch any more than Glover himself could. As Futch owned the land when Johnson rented from Glover, he has the right to recover the rent, notwithstanding Johnson had paid it to Glover, to whom he must look for reimbursement.

CAMPBELL, J., delivered the opinion of the court.

There is no error in the decision of the Circuit Court on the question of title to the land. The defendant below claimed under the same person from whom the plaintiff derived his title, and the plaintiff showed the better right. Indeed, the defendant showed none at all as against the plaintiff. True, he sought to show title derived from the State, which purchased the land when sold in 1876 for taxes accrued for the fiscal year 1875 ; but this deed conferred no title, both because it is not shown that the State purchased it, and because, if it

did, it acquired no title, as the levy of county taxes by the board of supervisors of Hinds County in 1875 was void, because not made by the board in session at the court-house of the county or other place at which it was authorized by law to hold its sessions. It is contended that though the deed be void, as seems to be conceded by counsel, it had the effect to compel the plaintiff to deraign title independently of the common source relied on by him, and which was sufficient, it is said, until it appeared that the defendant claimed from the State under the deed mentioned. The proposition is, that, although the deed conferred no title, it made color of title, and, therefore, the plaintiff was required to show title as against the world and recover on the strength of his title. This position is untenable. The plaintiff showed a right to recover as against the defendant. The defendant sought to defeat this right by connecting himself with a paramount outstanding title; but his effort failed, because the alleged outstanding title was shown to be nothing. It was not title. It was as harmless as if it had not existed. It is not a question of *color* of title, which is in some cases of great value, but it is a question of *title*, and, the deed from the State passing no title and the State having none, an outstanding title was not shown.

It was not erroneous to refuse to require the jury to deal with the eighty acres and the one hundred and sixty acres separately, in assessing mesne profits and damages, and the value of improvements. It would have been a mere favor to the defendant, at the expense of the plaintiff, which the court properly refused. While it might in some circumstances operate advantageously to a defendant, it might be highly injurious to the plaintiff, and there is no authority for it in the law, which fixes the rights of the parties. Without further noticing the several grounds of error assigned, we proceed to consider the important practical question involved in the instructions given to the jury.

The court instructed the jury, in substance, that the plaintiff was entitled to rent of the land from year to year, as it was improved, during those years, and that the defendant was entitled to pay for his improvements at their cash value, at the time of trial, without any estimate of what they were worth at

a former time for which the plaintiff recovered rent. This rule denies to an occupant entitled to pay for all valuable improvements, of a permanent character and not ornamental, their value as constituting a factor in creating or enhancing the rent received by the successful owner in an action of ejectment. It allows the owner of the land rent wholly caused or increased by the improvements of the *bona fide* occupant, and denies to the occupant the benefit of his improvements which in whole or part produced such rent. This is not justice as between the parties, and is not what the statute, Code 1871, § 1557, was intended to effect. Before the statute, the courts held that trespass for mesne profits was an equitable action, and, to do equity between the parties, the plaintiff was entitled to rents, and increased damages, beyond the rents, where circumstances made it proper and necessary, in order to make the plaintiff whole ; and the defendant who, in good faith, had made improvements of a permanent character, and beneficial to the owner, was allowed to set off against the demand for rents and profits the value of such improvements ; the principle being that the owner of the land should get his land, with its improvements, and pay for its use and occupation, and compensation for any special injury beyond this, but that, to the extent of the mesne profits and damages accrued, he should pay the defendant the value of his improvements, which were beneficial to the owner in the enhancement of the value of his land, and which had enhanced its value, in the past, in the matter of rent. The statute aims to effect justice by preserving the right of the owner as it existed before, and by enlarging the right of the defendant, by giving him the right to assert his claim to pay for the value of his improvements, as against the mesne profits and damages, and against the land, if the value of the former is greater than the latter. Without the statute, the right of the defendant was to set off his claim for improvements against the mesne profits, and, if the value of the improvements exceeded the mesne profits, the defendant was without redress. The principle of the statute is the same as the rule of the courts ; but the statute is more favorable to the defendant, in securing him pay for the value of *all* his improvements of the character and under the circum-

stances mentioned by the statute, by setting it off against mesne profits and damages, and if it exceeds those, by making it a charge on the land. The statute is silent as to the time with reference to which the value of the improvements is to be estimated. The estimate, of course, is to be made at the trial, but with reference to what time shall it be made? It must be so made as to allow the defendant pay for *all* his improvements of the character designated. That is what the statute gives him, " the value of all permanent valuable and not ornamental improvements." How shall this right be made available to him? The value of the improvements, as formerly existing, may have greatly declined. Time with its destroying agency may have consumed valuable improvements in the production of rents and profits, which are awarded to the plaintiff. The improvements may have produced or increased the rents and profits, and sustained their decline in value as existing at the trial, in such production or increase. If the plaintiff recovers his land, and rents and profits thus produced or enhanced, he thus recovers the improvements as they were during the time the mesne profits accrued, and he should not have the improvements or the benefit of them without paying for them. Improvements which contributed to swell the demand of the plaintiff as allowed should be paid for; otherwise the defendant is not allowed the value of *all* his improvements, and the plaintiff obtains them without making compensation for them. The statute intends that the plaintiff shall have the improvements, but shall pay for them. If he recovers the land, with the improvements existing visibly on it at the time of recovery, his obligation to pay their value is not disputed. If he has been awarded mesne profits and damages produced by the improvements which have passed away in their production, in whole or in part, he recovers these improvements or their value in this shape — transmuted into money. Justice requires that the claim for improvements shall be coextensive in time with the allowance of rents and profits which they contributed to produce. The plaintiff shall have rent, and, if circumstances render it proper and necessary to make him whole, he is entitled to damages for waste or special injury beyond the measure of rents; and the

defendant is entitled to the value of all the improvements described in the statute, no matter when they were made, so as thereby to compensate him for improvements which inure to the advantage of the plaintiff, whether by adding to the value of the land when recovered, or, retrospectively, by augmenting the amount of his recovery of mesne profits. This is justice between the owner and *bona fide* occupant, and that is what the statute was intended to effect.

The object is to deny to the successful plaintiff the rents which arise from improvements not paid for, and to secure to the defendant, who loses land and improvements, pay for the value of the improvements, to the full extent that they are recovered by the plaintiff, whatever is the shape in which he receives them. This is the rule in Chancery Courts. *Tatum* v. *McLellan*, 56 Miss. 352; *Neale* v. *Hagthrop*, 3 Bland, 551, 591. If the improvement does not inure to the benefit of the plaintiff, justice is done by denying the defendant the value of it; and, if the defendant can get no pay for an improvement, the plaintiff should not be allowed any rent, by reason of such improvement. *Nixon* v. *Porter*, 38 Miss. 401; In *Miller* v. *Ingram*, 56 Miss. 510, it was said, " The successful plaintiff is to have the land and improvements, but is to pay for the latter." In this opinion, we have shown how the owner is to pay for improvements. He must pay for them in a diminution of his demand for mesne profits to the extent that they arose from the improvements, or by an estimate of the value of the improvements as of the period when they contributed to the production of the mesne profits.

The court ruled correctly in holding that the defendant below was not protected by his payment of rent to Glover. It was his folly and misfortune to rent the plaintiff's land from Glover, and paying Glover the rent for the plaintiff's land did not affect his liability for it to the plaintiff. We find no error in the several rulings of the court, except in the denial to the defendant below of the right to have the value of *all* his valuable improvements considered as of the time when they contributed to the advantage of the successful plaintiff; but for that error the judgment will be reversed, and the cause remanded for a new trial in accordance with this opinion.                    *Judgment accordingly.*