# CASES ARGUED AND DECIDED

IN THE

# SUPREME COURT OF MISSISSIPPI,

AT THE

# OCTOBER TERM, 1882.

## F. A. WOLFE *v.* OWEN H. MURPHY.

1. TAXES. *Assessment. Default of assessor. Appointment by supervisors. Act of 1878.*
Sect. 26 of "An act in relation to public revenue," approved March 5, 1878, provided that assessors of taxes should complete their assessment-rolls and return the same to the clerk of the Board of Supervisors, on or before the first Monday of July in each year; and that if any assessor "shall fail to complete his assessment-rolls, the Board of Supervisors are hereby authorized to appoint some suitable person to make and complete such assessment-rolls in the same manner as the assessor is required to do by law, and to make return thereof at some suitable time, to be fixed by the board." The Board of Supervisors was not authorized by this act to appoint an assessor to complete the assessment which he had neglected to make within the time prescribed by law, yet where such appointment was made, the acts of the appointee in pursuance of his appointment were valid as to third persons, as the acts of a *de facto* officer.

2. BOARD OF SUPERVISORS. *Adjourned meeting. When illegal. Effect.*
A Board of Supervisors had no authority, under the Code of 1871 and subsequent acts of the Legislature, to hold an adjourned meeting at a time not appointed by law; and any acts done by a board at such an illegal meeting were invalid.

3. TAXES. *Assessment. Return of rolls. Duty of supervisors. Objection of tax-payer. Act of 1878.*
Sect. 29 of the revenue act above referred to provided that whenever an assessment "by any person appointed by the Board of Supervisors for that purpose, on the failure of the assessor to return his assessment, shall be made, the board shall immediately assemble to receive and examine the same," etc.

The purpose of this provision was to require the Board of Supervisors to determine as between their appointee and the State whether he had performed the duty imposed upon him; but their non-observance of the requirement of the statute, or the performance thereof in an illegal manner, was not a matter of which any tax-payer could complain.

4. SAME. *Assessment. Equalization and correction. Meeting of supervisors. Act of 1878.*

· By sect. 27 of the revenue act of 1878 it was enacted, "That the Board of Supervisors of each county shall hold a meeting at the court-house on the first Monday of August, to hear and determine objections, equalize assessments, and to examine and receive the same. The board shall examine the assessment-rolls, and hear and determine all exceptions thereto, and shall sit from day to day until the same shall have been disposed of and all proper corrections made." The failure of a Board of Supervisors to remain in session "from day to day" until objections to the assessment had been determined and the proper corrections made, as contemplated by the above provision, would not render the assessment illegal where sufficient time was given for the hearing and determination of objections, and the making of corrections, and the rolls were subsequently approved by the board.

5. SAME. *Assessment. Approval thereof. When to be made.*

Although the revenue law of 1878 contemplated an approval of the assessment-rolls by the Board of Supervisors at their regular term in August, their failure to do so would not invalidate an assessment, if it was approved at a subsequent meeting authorized by law and before the levy of the county taxes.

6. BOARD OF SUPERVISORS. *Its meetings in Hinds County. Act of January 27, 1876, construed.*

By an act approved January 27, 1876, it was provided, "That, hereafter, the Board of Supervisors of Hinds County be, and they are hereby required to hold sessions of said board, alternately, at the court-house in. Raymond, in the Second Judicial Circuit Court District, and at the city of Jackson, in the First District of said Circuit Court, and in the city hall, the court-house of said first district." Although the wilful disregard by the Board of Supervisors of the directions of this act renders them liable to criminal prosecution, still the act must be regarded as directory when sessions of the board are attacked as illegal because not held in conformity with its requirements. ·

7. TAX-TITLE. *Failure of collector to file lists of land. Effect as to purchaser.*

The failure of a tax-collector to make and file with the clerk of the Chancery Court separate lists of the land sold to individuals, at a sale for taxes, *on or before* the first Monday of April succeeding the sale, as directed by sect. 40 of the revenue act of 1878, does not affect the title of a purchaser at such sale. The purchaser is protected by sect. 8, Art. XII., of the Constitution, which provides that "the courts shall apply the same liberal principles in favor of such titles as in sales by execution."

APPEAL from the Chancery Court of Hinds County.
Hon. E. G. PEYTON, Chancellor.

On the 1st day of March, 1880, the sheriff of Hinds County sold a certain lot of land lying in the city of Jackson, for the taxes which were then due and unpaid, and F. A. Wolfe became the purchaser thereof. Wolfe received from the sheriff a deed of conveyance of the lot; and on the 6th of March, 1882, the time allowed for redemption by the original owner having expired, and the lot not having been redeemed, Wolfe filed a bill in chancery against the former owner, Owen Murphy, seeking to have removed from his title the cloud cast upon it by the claim set up by Murphy, who still remained in possession.

The defendant resisted the bill on the ground that the sale for taxes was illegal and void. The facts stated in the answer to show the illegality of the sale were substantially these: The County Board of Supervisors met at the city of Jackson on the first Monday of July, 1879, and the assessor of taxes, B. W. Henry, having failed to complete and return the assessment-rolls, as required by law, the board made an order appointing him to complete the assessment and make return thereof. The order required the appointee to return the assessment-rolls on the third Monday of July, and the board adjourned to meet in the town of Raymond on that day. In pursuance of this order, the board met on the third Monday of July, 1879, at Raymond, and made an order receiving the assessment-roll and directing that the same be filed, and designating the first Monday in the following August as the time for hearing objections and equalizing assessments. On the first Monday of August the board again met at Raymond, and were several days engaged in hearing objections and equalizing assessments, and then adjourned to meet on the 11th of August current. On the last named day the board met at Jackson, consumed some time in examining the assessment-rolls, and adjourned to meet at Raymond on the first Monday of September, 1879. The board met at Raymond on the day last named, and made an order approving the assessment-rolls, and levying the county taxes for that year. The tax-collector failed to make out and

---

---

file, within the time prescribed by law, lists of the land sold for taxes on the 1st of March, 1880, for the taxes of 1879; and the lists were not properly recorded. It was agreed between the parties that these facts stated in the answer were true.

Sect. 26, of the revenue act of 1878, provided : " That the assessor shall complete and certify his assessment-rolls, and deliver the same to the clerk of the Board of Supervisors in his county, on or before the first Monday in July in each year, where the same shall remain until the first Monday in August following ; and any person dissatisfied with any assessment may file his objections thereto, in writing, on or before the first Monday in August, which shall be filed by said clerk and preserved with said rolls ; that if any assessor shall fail to complete or certify his assessment-rolls, or if the same should be rejected by such board, the Board of Supervisors are hereby authorized and empowered to appoint some suitable person to make and complete such assessment-rolls in the same manner as the assessor is required to do by law, and to make return thereof at some time to be fixed by the board."

By sect. 27, of the revenue act of 1871, it was enacted "that the Board of Supervisors of each county shall hold a meeting at the court-house, on the first Monday of August, to hear objections, to equalize assessments, and to examine and receive the same. The board shall examine the assessment rolls, and hear and determine all exceptions thereto, and shall sit from day to day until the same shall have been disposed of and all proper corrections made ; and if said board shall receive and approve such assessment, the clerk shall make two fair copies," etc.

Sect. 29 of the act referred to directed " that assessments made by any person appointed by the Board of Supervisors for that purpose, on the failure of the assessor to return his assessment, shall, if practicable, be made and returned by the 1st of September ; and whenever the same shall be made, the board shall immediately assemble to receive and examine the

same, and shall, if necessary, appoint some early day to hear and determine objections thereto, and, when approved, they shall cause the copies of the same to be made out," etc.

The county of Hinds is divided into two judicial districts, and by an act approved January 27, 1876, it was provided " that hereafter, the Board of Supervisors of Hinds County be, and they are hereby required to hold sessions of said board, alternately, at the court-house at Raymond, in the Second Judicial Circuit Court District, and at the city of Jackson, in the First District of said Circuit Court, and in the city hall of the court-house of said district."

The case was heard upon bill and answer. The bill was dismissed, and complainant appealed.

*Shelton & Shelton,* for the appellant.

1. It is first contended for the appellee that B. W. Henry, the assessor of the county, having failed, from some unknown cause, to complete, certify, and deliver to the clerk of the Board of Supervisors the assessment-rolls on or before the first Monday in July, 1879, under sect. 26, of the revenue act of 1878, it was illegal for the board to appoint him to complete the assessment.

The law does not contemplate that the assessor shall not be appointed to complete the rolls. It does not say " some other suitable person," but simply says " some suitable person." The discretion as to who shall be appointed to complete the rolls is necessarily left with the board, and, unless it is apparent that they have abused that discretion to the prejudice of the tax-payer, their exercise of it will not be interfered with by the courts. Nothing of the kind appears in this case, and there may have been, and doubtless were, many good reasons why the board should appoint Henry to complete the rolls. Circumstances over which he had no control, and which were known to the board, may have prevented his completing them by the first Monday in July. Circumstances may have existed why he was the most suitable person of all others to be appointed to complete the work already commenced and far ad-

vanced by him, as is apparent from the short time in which he did complete it.

The appellee is not shown to have been prejudiced by this action of the board, and he ought not to be heard to complain.

2. The next objection seems to be that the board could not legally hold its next meeting at Raymond on the third Monday in July, and call it an adjourned meeting. The time of this meeting was fixed by the order appointing Henry to complete the assessment, and this it was their duty to do under sect. 26, wherein it is said that the person so appointed shall " make return thereof (meaning the assessment-rolls) at some time to be fixed by the board," and under sect. 29 it is required that, " whenever the same (the assessment-rolls) shall be made, the board shall immediately assemble to receive and examine the same, and if necessary appoint some early day to hear and determine objections thereto," etc.

This was strictly a legal meeting, the board, by its order made under sect. 26, having fixed the time thereof, and the rolls being made, the board immediately assembled in accordance with sect. 29, and whether they called it an adjourned meeting or not is wholly immaterial. Nothing was done at this meeting but to receive and file the rolls, and adjourn to meet on the first Monday in August to hear and determine objections thereto.

How was the appellee prejudiced by what was done by the board at this meeting?

3. On the first Monday in August the board met at Raymond and proceeded to hear and determine objections to the assessments, and continued therein during three days, and then adjourned to meet at Jackson on the succeeding Monday.

This meeting was strictly in accordance with sect. 27 of the act of 1878, they being thereby required to hold the same on that day and at the court-house, which is in Raymond, the county seat of Hinds county.

It is objected that this meeting was illegal, because by the

act of 1876 (p. 365), the board was required to hold its meetings alternately at Jackson and Raymond, and having held the next preceding meeting at Raymond, this one should have been held at Jackson. The Board of Supervisors was in this dilemma: Having held their preceding meetings during the year alternately at Jackson and Raymond, and the one next preceding having been held at Raymond, they were compelled to run counter to either the act of 1876 or the act of 1878, that is according to the strict construction sought to be put upon those acts. But we insist that the two acts, when considering the action of the Board of Supervisors of Hinds County, should be fairly construed and not technically, and that by a fair construction the board could legally have held this meeting at either Jackson or Raymond.

4. On the 8th of August the board adjourned to meet at Jackson on the 11th, and proceeded to examine the assessment-rolls during that day, and on the 12th adjourned to meet at Raymond on the first Monday in September, which it did, and approved the assessment and levied the tax for the year 1879.

The point of the objection here seems to be that the board, when, at its meeting on the first Monday in August, at Raymond, it entered upon the matter of hearing and determining objections and equalizing assessments, should have continued to sit from day to day until the same were disposed of. True, the general revenue law of 1878, sect. 27, says that the Boards of Supervisors " shall sit from day to day until the same shall have been disposed of," etc. But this is the general law applicable to the whole State, and when we come to construe that act with reference to Hinds County alone, all the act in relation to the Board of Supervisors of that county must be taken into consideration.

It will be remembered that the county of Hinds is by law divided into two districts. That for a long time after the division of the county there was no local law regulating the meeting of the Board of Supervisors at Jackson, and they

met at Raymond, the county seat. The Legislature recognizing the fact that the division of the county into two districts had virtually made two counties of it, and recognizing the objects and purposes of that division of the county, to wit : the public welfare and interest of the county and the convenience of the citizens thereof, in 1876 passed an act authorizing the board to meet in both districts, at Raymond in the Second and Jackson in the First District. Session Acts 1876, p. 365.

Under this act of 1876 it was undoubtedly the duty of the Board of Supervisors to hold their meetings, while hearing objections to the assessment-rolls, both at Raymond and Jackson, so as to afford the tax-payers an opportunity to make their objections to the assessment of their property in the district in which they resided, and in which their property was located.

All the foregoing objections go to the validity of the assessment, and are based upon an alleged failure to comply strictly with the act of 1878.

We submit that the acts in regard to the meetings and actions of the board relating to the assessment, are not mandatory but directory purely. In every instance a failure to perform the prescribed duty within the time mentioned is fully covered by provisions for its being done, so as to correct the effect of such failure, and finally to settle all such technical objections. Sect. 27 provides that " said (assessment) rolls, after being examined and corrected as aforesaid, shall be final and conclusive as to the assessments therein contained ;" but any person aggrieved may appeal, thus pointing out the remedy to those who have been erroneously assessed. Their remedy is confined to the one pointed out. It was never intended that a failure to comply strictly with the letter of the law should defeat the law itself, and especially in regard to the assessment of property. A proof of the correctness of this position is found in sect. 35 of said act, which provides

that where the assessor has failed to assess land or personalty the sheriff shall, without ceremony, make the assessment and proceed to collect the tax.

Sects. 30, 31, also show the correctness of our view. *Virden* v. *Bowers*, 55 Miss. 1; *Gamble* v. *Witty*, Id. 26.

5. Lastly, it is objected that the sheriff did not file the lists with the chancery clerk within the time required by law, and the clerk did not properly record such lists. These were matters transpiring after the sale, and unless expressly so declared in the statute, the failure of the officers to perform these duties could not affect previously acquired rights under the sale.

Whether the lists and conveyances were filed within the time mentioned in the act, or whether the clerk recorded the lists strictly in accordance with the act, is immaterial, as this court has decided. *Powers* v. *Penny*, 59 Miss. 5.

Not one of the objections urged to the appellant's tax-title can be considered a fundamental objection. All that the Constitution requires, is that there shall be an assessment, a levy of the tax, a failure to pay the tax and a sale.

The when, where, how, and by whom the assessment, levy, and sale shall be made, are entirely within the control of the Legislature, and having that power, the Legislature can make such requirements as may seem proper, and it can make them necessary prerequisites, if it so pleases. But in that power is also necessarily involved the power to make the failure to comply with its directions immaterial, and this the Legislature has done.

*L. Brame*, for the appellee.

The assessor, Henry, having failed to make out and return the assessment-rolls as required, it was an evasion of the law and a violation of the statute for the Board of Supervisors to appoint him to complete and return the same. Acts 1878, p. 37. If it be true that it was competent for the board to appoint Henry, upon a showing that he had not been derelict, and was a suitable person, it does not appear that any such

showing was made. Presumably he was an improper person; he was in default.. The action of the board is unlike the judgment of a court of general jurisdiction, especially in the matter of levying taxes and taking private property without the consent of the owners, every essential fact upon which is predicated the power of the board to act, must be shown to have existed.

The board having met at Jackson, on the first Monday of July, 1879, had no power to "adjourn" over and meet at Raymond on the third Monday of that month. If it was necessary to appoint some time to be "fixed by the board," under sect. 26 of the act of 1878, to receive the rolls, notice of that time should have been given, so as to make the meeting a valid one, and in order that the citizens of the county might be informed of the time and place of the meeting. This was a matter highly important to the tax-payers.

The board then "adjourned to meet at Raymond, the first Monday in August." If the meeting at Raymond on the third Monday in July was legal, this meeting, at the same place immediately following, on the first Monday in August, was illegal, because in violation of the positive terms of the act of 1876 (p. 365), which "required" the sessions of the board to be held alternately, at Jackson in the First District of the county, and Raymond, in the Second. Having in view the public interests, and the convenience and welfare of the citizens and property-owners in the two districts of the county, the Legislature made this mandatory requirement in regard to the meetings of the board, and it could no more be ignored or disregarded than could the law in reference to the terms of the Circuit Court. If the board had the right to set up its judgment against the law and violate its provisions by meeting twice in succession at Raymond, all the sessions could be held there.

. Counsel for appellant ask how this irregularity could prejudice appellee. Our understanding of the law and the requirements of. the Constitution is, that in order to a legal sale for taxes, there must be a valid levy, assessment and sale, and

that if either is illegal the sale is void, without regard to the question of prejudice. In the case of *Johnson* v. *Futch*, 57 Miss. 73, for example, a tax-title based upon a levy made by the Board of Supervisors while in session at Jackson, instead of Raymond, was void. Did the court inquire whether the tax-payer was prejudiced by the action of the court in meeting at the wrong place? By no means.

The board having met at Raymond on the first Monday in August, and entered upon the examination of the tax-rolls and hearing objections thereto, and equalizing assessments, continued the work four days, and on the 8th " adjourned " to meet at Jackson on the 11th day of August. They did so meet at Jackson, and, after consuming one day in examination of the rolls, on the 12th of August adjourned to meet at Raymond on the first Monday in September, when and where the rolls were approved.

In examining and passing upon the tax-rolls the board exercised a judicial function, and one highly important to the tax-payers, all of whom were, in legal contemplation, present, or were entitled to be, in order to witness the entry of the judgment that would condemn their property to the payment of the taxes thereafter to be levied. When the board met for this purpose on the first Monday in August, at Raymond, it was their plain duty, under the positive requirements of the statute, to sit from day to day until all objections were disposed of and the rolls were completed. Act 1878, sect. 27. Every citizen and tax-payer in the county had the right to assume that they would do this, and if they violated the law their action would be null and void, thus rendering it unnecessary, in any case, to appeal to the Circuit Court to correct an erroneous or unjust assessment.

. The board, however, did not follow the law, plain as it was. On the 8th of August they adjourned at Raymond to meet at Jackson, on the 11th. This was not alone a violation of the requirement that they should sit from day to day until the rolls were completed, but in meeting at Jackson at the time they

did, they were guilty of a further violation of law. *Smith* v. *Nelson*, 57 Miss. 138. There was no more authority for this meeting at Jackson than there would have been for a meeting at Clinton, Utica, or any other place in or out of the county, as was held in *Johnson* v. *Futch*.

In endeavoring to dispose of one of the objections to this, and the meeting held on the third Monday in July, counsel for appellant claims that it is to be presumed that notice of the meeting was given in accordance with the statute.

In the case of *Smith* v. *Nelson*, counsel for defendant in error argued that the *prima facie* presumption of the legality of the meeting of the board was overcome by the entries on the minutes, showing that the meeting complained of was an " adjourned meeting," and the court decided in favor of this view. The same question is here presented.

In the first portion of the brief of counsel for appellant they endeavor to show that the law requiring sessions of the Board of Supervisors to be held at Jackson and Raymond alternately is merely directory, and that it can be disregarded. In this way it is sought to dispose of the objection that the board met at Raymond on the third Monday in July, and at the same place immediately afterwards on the first Monday in August. But when it comes to be considered that the board wrongfully adjourned at Raymond on the 8th of August, to meet at Jackson on the 11th, counsel invoke the act of 1876, as requiring the meetings to be held alternately at each place. The fallacy of this reasoning is apparent.

After the board met at Raymond, on the 4th of August, and entered upon the duty of examining and equalizing the tax rolls, it might have been a good arrangement for the citizens of the First District for them to have adjourned to Jackson ; for the same reason they might have gone to every election precinct in the county. There was as much authority for one course as the other.

In the case of *Chapman* v. *Leman et. al.*, decided in the United States Circuit Court here at the last term, it was held

that the action of the board in adjourning over and meeting at Jackson on the 11th of August, was illegal and rendered the assessment void.

In all these meetings it would have been an easy matter to have complied literally with the general law and the act requiring the sessions of the board to be held alternately at the two places. And, if special sessions were necessary, it would have been an easy matter also for the board to have followed the directions of the statute in respect to giving notice of the time and place of holding such meetings.

Counsel objects to a strict interpretation of the statutes in question relating to the action of the board in this matter of laying taxes, and insist upon a liberal, or " fair " construction.

If the rule *stricti juris* does not apply here with all its force and rigor, this court erred in the following, among other cases: *Gamble* v. *Witty*, 55 Miss. 34; *Johnson* v. *Futch*, 57 Miss. 73; *Smith* v. *Nelson*, 57 Miss. 138; *Stovall* v. *Connor*, 58 Miss. 138; *Harris* v. *Stackett*, 58 Miss. 825; *Howard* v. *Walters*, MS. October Term, 1881; *Davis* v. *Vanarsdale*, 59 Miss. 367.

My conclusion, drawn from all the utterances of this court, in connection with the statutes and the Constitution, is that there are four things necessary to sustain a tax-title: 1. The tax must be due and unpaid. 2. There must be a valid assessment. 3. There must be a valid levy. 4. There must be a valid sale.

COOPER, J., delivered the opinion of the court.

The assessment was not invalidated because the Board of Supervisors appointed the delinquent assessor to complete the rolls. It was never contemplated by the Legislature that Boards of Supervisors should, under cover of the authority conferred upon them to appoint some suitable person to complete the assessment, where assessors had failed to do so, appoint the delinquent officer as his own successor, and thu

extend the time given to him by the statute for the perform-
ance of his official duty. The intention was to incite the of-
ficer to the performance of his duty, by the fear of the loss
of his official fees, and no power was given to the board to
extend directly or indirectly the time fixed for the return
of the rolls by him. But while the members of the board
were, by the unauthorized appointment of the delinquent offi-
cer, guilty of a violation of their official duty, for which they
were punishable by indictment, the officer, when appointed,
was in possession of the office by color of right, and his acts
as to third persons were valid as the acts of a *de facto* officer.

The meeting of the Board of Supervisors, held on the 21st
day of July, at Raymond, in pursuance of the order of ad-
journment made at their July term, was illegal. It was not a
term the time of which was fixed by law, nor was it called in
the manner prescribed by sect. 1353 of the Code of 1871;
it was an adjourned meeting, and for such there is no warrant
in law. *Smith* v. *Nelson,* 57 Miss. 138.

Under the circumstances, however, this meeting was unnec-
essarily held, and the assessment was not invalidated by its
invalidity. *Utile per inutile non vitiatur.*

The Legislature contemplated, that save only in exceptional
cases, the assessment would be completed by the assessor in
the manner and within the time prescribed, in which event the
tax-payer was required to take notice that on and after the
first Monday in July, the rolls would be found in the office of
the clerk of the Board of Supervisors, and would there remain,
subject to examination and exception, until the first Monday
of August, when the Board of Supervisors would convene to
consider all objections filed, and to equalize the assessments.
This return of the roll was to be made to the clerk of the
board, and not to the board itself; it was to remain in his
possession during the time allowed for exceptions, and passed
into the custody of the board only when this time had expired.
In the meantime, the board could take no step to fix the as-
sessment as a charge on the tax-payer; but it might, as the

agent of the State and county, at its July term, examine the roll to determine whether the assessor had complied with the statutory requirements, and if he had not, it might appoint some other person in his place to complete the work.  If the assessor had performed his duty in the manner, and at the time, prescribed, no order receiving or approving the roll was then made.  If the assessor was in default, and another person was appointed to complete the rolls, he was to " complete such assessment in the same manner as the assessor is required to do by law, and to make return thereof at some time to be fixed by the board. "  This return was to be made, not to the board, but to their clerk, to whom it would have been returnable if it had been made by the assessor.  It was before the clerk that any one desiring to file objections was to go, and he was to file and preserve with the rolls any objections so taken. It is true that sect. 29 of the act of 1878, declares that " when the assessment shall be made, the board shall immediately assemble to examine and receive the same, and shall, if necessary, appoint some early day to hear and determine objections thereto. "  But nothing more is meant by their receiving and examining the roll, than that they should determine, as between their appointee and the State, just as at their July term they determine as between the assessor and the State, whether he has performed the duty devolved on him. This is a matter in which the tax-payer has no individual interest, and the failure of the board to meet for that purpose, or the fact that the meeting was not lawfully held, gives him no more right to attack the assessment than he would have had if it had been legally filed by the assessor, and the board had failed to hold its July term.

The failure of the board to remain in continuous session at their August meeting until all objections to the roll had been disposed of, and all proper corrections made, did not render the assessment illegal.  The object of the Legislature in providing that the board should sit from day to day, until this should have been done, was that ample time should be given

to properly dispose of the exceptions. It was the length of the term, and not its continuity, that was intended to be provided for. It is equivalent to saying the board shall continue in session so long as the business shall require.

No order was made at the August term approving the roll as corrected, but such order was made at the September term, and before the levy of the county taxes. In *Davis* v. *Vanarsdale*, 59 Miss. 367, we held that the law contemplated an approval by the board of the assessment, without which it was incomplete. In that case nothing appeared in the record from which we could infer the fact of such approval, but we then thought, as we now decide, that an approval preceding the levy of the tax, though made at a subsequent term, is sufficient.

After all objections which have been interposed to the assessment have been heard and determined, and all proper corrections made, which things are required to be first done, ordinarily its approval would naturally follow. If, in approving the assessment, the board acts *quasi*-judicially, it rather judges of the assessment as a whole than of any isolated fact or separate part affecting the rights of any particular person. If any error or irregularity has occurred in any previous proceeding, the individual injured thereby has, at the proper time, had opportunity for excepting; but if all prior acts have been regular and legal, the approval by the board is a matter as to which no objection would be heard. This order of approval is, in fact, rather a declaration that the assessment is completed than an adjudication of its legality, and it is wholly immaterial to the tax-payer whether it is made at one term or another; it is only necessary to be made at all because the Legislature has required it to be done.

It it shown by the record that the meeting of the Board of Supervisors on the 21st of July was held at Raymond; that on the first Monday of August they met at Raymond and continued there in session five days, when they adjourned to meet in Jackson on the Monday next following, on which day they met in Jackson and continued in session two days, when they

adjourned until the regular September term, which was held in the town of Raymond, and then an order was made approving the assessment and levying the county taxes.

By an act approved January 27, 1876 (Acts 1876, p. 365), it was enacted "that hereafter the Board of Supervisors of Hinds County. be, and they are hereby required to hold sessions, alternately, in the court-house at Raymond, in the Second Judicial Circuit Court District, and at the city of Jackson, in the First District of said Circuit Court, and in the city hall, the court-house of said First District."

It is contended by counsel for the appellee that this act is mandatory, and that no legal session of the board could be held unless the alternation prescribed had been followed, and therefore that either the August or September term was illegal, as they were both held at Raymond. The objection to such construction is that the legality of any meeting of the board would depend upon that of other precedent sessions, the validity of each of which would in turn rest upon that of other anterior terms. Such construction of the act would produce appalling consequences and confusion, both as to the past and future action of the board. If, as is probable or possible, early in the operation of this act, some blunder or error in judgment was committed, and two successive sessions were held in Raymond or Jackson, are all its subsequent sessions unlawful? Are all contracts made, judgments rendered, orders for the expenditure of county funds and levies of taxes to be held as void, unless, by happy chance, a second error has restored the succession? One mistake would invalidate all subsequent sessions; the second error would correct the evil, but the third would reproduce it, and so, the validity of any act of this important body would be determined, not by any known or certain standard, but by discovering whether its precedent errors were of an odd or even number.

In *Jones* v. *Burford*, 26 Miss. 194, it was decided that a special meeting of the Board of Police, held without the pres-

ident of the board having first given the ten days' notice pre-
scribed by the statute, was void.

So also as to a session held at a time or place not authorized
by law.  *Gamble* v. *Witty*, 55 Miss. 26 ; *Johnson* v. *Futch*,
57 Miss. 73.

But this case is distinguishable from all of these, in this,
that in those the act to be done, or the time and place at which
the sessions were to be held were definite and fixed by the law,
there was no uncertainty, no room for doubt, no investigation
of past transactions.   If the act of 1876 is peremptory, the
legality of any session is not determinable by anything short
of an examination of the history of every precedent session
since the adoption of the law.   The body of to-day, if it should
attempt to satisfy itself of the legality of any term proposed
to be held, would have to go into an inquiry, touching not
only their own past acts, but of those of their predecessors,
and of the predecessors of their predecessors.   A construction
producing a result so mischievous cannot be adopted ; the act
must be held to be directory, and though binding upon the
members of the boards, rendering them liable to prosecution
for its wilful disregard, as not making void the sessions of the
board, though they are not held in conformity with its require-
ments.

The failure of the collector to make and file with the clerk
of the chancery court separate lists of the land sold to
individuals, on or before the first Monday of April suc-
ceeding the sale, as directed by sect. 40 of the act of 1878,
does not at all affect the title of the purchaser.   By sect. 8 of
Art. XII. of the Constitution, it is declared that " the courts
shall apply the same liberal principles in favor of such titles
(tax-titles), as in sales by execution."

But for this constitutional provision, the title of a purchaser
at a sale for taxes would depend upon a strict compliance by
the officer with all the statutory requirements, but with us, if
the power to sell exists, no mere irregularity in its exercise will

avoid the sale.  *City of Natchez* v. *Minor*, 10 Smed. & M. 255 ; *Virden* v. *Bowers*, 55 Miss. 1.

These views render unnecessary the consideration of the curative act of 1882.

The decree is reversed and cause remanded for a decree in accordance with this decision.