### V. R. HOWIE v. A. M. ALFORD ET AL.

[56 South. 797.]

1. TAX DEEDS. *Time of filing. Code* 1906, *sections* 4328, 4332, *and* 4338. *Laws* 1908, *chapter* 199. *Constitution* 1890, *section* 79.

   Where lands were sold for taxes to an individual on the first Monday of April, A. D. 1908, as required by section 4328, Code of 1906, as amended by Laws of 1908, chapter 199, but the tax collector failed to file the deed to such lands as provided by section 4338, Code 1906, on or before the first Monday of April, 1908, such deed was void.

2. SECTION 4332, CODE 1906. *Constitution* 1890, *section* 79.

   Section 4332, Code of 1906, providing what defects shall invalidate a tax deed, etc., deals with proceedings leading up to the sale, (prior proceedings), and has no reference to dealings with the

title after the sale is made; nor in such case can section 79, of the Constitution of 1890, providing for the application by the court "of the same liberal principles in favor of such titles as in sales by execution," be invoked.

Appeal from the chancery court of Hinds county.

Hon. G. G. Lyell, Chancellor.

Bill by V. R. Howie against A. M. Alford. From a decree dismissing the bill complainant appeals.

The facts are fully stated in the opinion of the court.

*V. R. Howie,* for appellant.

Under the common law rule our court seemed to be inclined to hold that failure to file deed at proper time was fatal.

Prior to the Constitution of 1869, the decisions of our court followed the common law rule, in regard to the tax sales and tax titles. There are a number of decisions which follow this rule, but there are none that follow it which arose after the Constitution of 1869. There can not be found a single case, in our decisions, where the question of the failure of the sheriff to file the deed with the clerk, within the time prescribed by law, is involved, based on a case and sale dated since the Constitution of 1869, that even inclines toward the former decision which followed the common law rule.

The common law rule is that all statutes regarding or affecting tax sales shall be interpreted strictly against the purchaser and liberally in favor of the former owner; and that all errors or mistakes on the part of the officers in the proceedings prior to the sale, at the sale, and after the sale, shall be construed strictly against the purchaser and liberally in favor of the former owner. Under this rule, our court seemed to be inclined to hold that a failure of the sheriff to file the deeds to individuals, or the lists of lands sold to the state, would invalidate the sale and make the title of the purchaser, individual or state, void. A close reading of cases that hold this

reveals the fact that each and every one of them depend upon sales made prior to the Constitution of 1869. Some of these decisions were rendered after the adoption of that Constitution, and in fact one or two have been rendered only very recently, but the sales involved were prior to 1869. In the case of *Vasser* v. *George,* 47 Miss. 713, and *Seales* v. *Perkins,* 51 South. 806, this point was involved and decided, but in both cases it was involved only on question of validity of sale of 1867; and, as is well established in our law, the validity of a tax title must be interpreted, and determined, by the law as it existed at the time of the sale for taxes. *Capital State Bank* v. *Lewis,* 64 Miss. 727. Hence the titles therein declared invalid under the common law rule were not affected by the constitutional provision in the Constitution of 1869, and these decisions do not constitute authorities for this present case. The case of *Bank* v. *Railway Co.,* 72 Miss. 447, is finally reduced to the question as to whether the failure of the sheriff to file his returns as provided by law under a sale of 1862 vitiates the sale. The other sales were settled on account of other matters.

It may seem that the case of *Adams* v. *Mills,* 71 Miss. 150, is an exception to the statement above made, but such is not the case. It is true that the court did mention the point in regard to the deed not having been filed with the clerk for the whole period, but this matter was not before the court. It was not presented in the briefs of either side and we must presume was not considered by the court. Here the deed had been withdrawn marked cancelled. In other words the law had been complied with to cancel the deed. The deed had been cancelled so of course could not be reinstated. The clerk could not reinstate the title after having cancelled it, as he attempted to do. The last clause of the decision, which is the only one that can be considered decisive, states very clearly and conclusively, that the question therein decided by the court was as to the effect of the cancella-

tion of the deed by the clerk, and the effect of the clerk afterward marking off the cancellation and redepositing it. As above referred to this constitutes and entirely different case, from the present case, so cannot be cited as an authority.

Prior to the Constitution of 1869, tax titles in the state of Mississippi had become worthless and looked upon as no more than a joke. The result of this condition was that all, or almost all, of the land which was forfeited for the non-payment of taxes was sold to the state. No one would bid in the lands because of the fact that the title was worthless, there always being some little irregularity which under the common law rule would defeat the purchaser's title. This condition exists in all the states of the Union at one time or another and from time to time all have attempted to remedy this and strengthen tax titles. The Constitution of 1869, article 12, section 8, was the first time that anything was done that materially helped tax titles in Mississippi. This article provides as follows: "The legislature shall provide by law for the sale of all delinquent tax lands. The courts shall apply the same liberal principles in favor of such titles as in sale by execution," which section was carried forward in the Constitution of 1890, section 79. This provision of the Constitution introduced for the first time a rule for the guidance of the court in passing upon tax titles. In the case of *Virden* v. *Bowers*, 55 Miss. 1, we have the following language of the court, to wit: "Section 8, article 12, Constitution 1869, in the first clause introduced for the first time a permanent rule, which repealed the old rule, to guide the courts in the consideration of such titles." Thus it appears that the only decision which can be considered as a precedent for this court, is such as have involved tax titles arising from sales made subsequent to the passage of the Constitution of 1869. This being true, the question presents itself as to what the meaning of this provision in the

Constitution is, and what that rule therein provided for means?

We have an abundance of cases from our courts and from other courts as to what is meant by the same liberal principles in the construction of facts pertaining to execution sales. In the case of *Howe* v. *Starkweather,* 18 Miss. 261, we have the following, towit:

"The purchaser depends on the judgment, the levy, and the deed. All other questions are between the parties to the judgment and the marshal." Citing from *Wheaton* v. *Sexton,* 4 Wh. 506.

"Where there is an authority, not strictly pursued, the sale is not void," citing Kentucky case.

"Judgment, execution, levy, and deed are all that is required." Citing from *Ware* v. *Bradford,* Alabama Report, 682.

"Deed not prejudiced by failure to make proper returns," quoting from *Doe* v. *Heath,* 7 Black, 156.

"If notice has not been given, purchaser's title will not be affected." Citing *Allen's Lessee* v. *Parish,* 3 Ohio Report, 187.

We submit that if these same liberal principles are applied to the present case, according to the rule set out in our Constitution, the title must be held valid and the decree of the chancellor reversed.

Mayes, C. J., delivered the opinion of the court.

At the January, 1911, term of the chancery court of Hinds county, V. R. Howie filed a suit for the purpose of having a tax title quieted. The suit complies with all the requirements of the statute authorizing proceedings of this kind, and we will not burden the statement of this case with facts which do not involve the legal questions presented for decision.

The complaint alleges that the land was liable for taxes for the year 1907, and was properly assessed; that the tax was not paid for that year and the land was sub-

sequently advertised, as is required to be done by section 4326 of the Code of 1906, "for sale at the door of the courthouse on the first Monday of April." The complaint then charges that on the first Monday of April, 1908, which was the 6th day of that month, the land was sold for the nonpayment of the tax due for the year 1907, and appellant became the purchaser at that sale. The complaint further shows that, although the sale of this land was made on the first Monday of April, 1908, the deed of the tax collector was not filed in the office of the chancery clerk until the 25th day of April. The complaint concludes with a prayer for summons, and that the court enter a decree confirming and quieting appellant's title. The complaint was demurred to on several grounds; the chief being that there was no equity on the face of the bill. This ground challenges the whole bill, and we shall take no notice of the other grounds. The court sustained the demurrer, and dismissed the bill, and from this judgment an appeal is prosecuted.

Let us emphasize the fact that the sheriff's deed was not filed on or before the first Monday of April, as required by section 4338 of the Code of 1906, but was filed nineteen days later. This fact, in view of section 4338 of the statute, which requires that the "tax collector shall file all conveyances of land sold to individuals in the office of the chancery clerk of the county, on or before the first Monday of April, there to remain for two years from the day of sale, unless," etc., would seem to end this controversy. Because section 4328 of the Code of 1906, as amended by Laws 1908, page 208, requires the sale to be made on the same day that the deed is required to be filed, this fact can furnish no justification to this court if it should undertake to do legislative work, and thus correct what is conceived to be a legislative blunder.

This court has twice held that this section was mandatory, and that the failure to file the deed with the clerk,

as required by this section, made the deed void.   See
*Adams* v. *Mills*, 71 Miss. 150, 14 South, 462, and *Sintes*
v. *Barber*, 78 Miss. 585, 29 South. 403.   In the case of
*Adams* v. *Mills* this court said that "the requirement
that the conveyance should be deposited and remain in
the office of the clerk was manifestly for the benefit of
the owner of the land, who by the law was pointed to
the place where he should apply for the purpose of re-
deeming."   It is true that the tax collector is required
to file the conveyance in the office of the clerk the very
day that the law requires the sale to be made, and it is
also true that he may have some difficulty in complying
with the statute, but this fact cannot furnish this court
with authority to amend or repeal the law as declared
by the clear language used by the legislature.   There is
no ambiguity about the statute, and it is possible of be-
ing complied with.   Our duty to enforce the statutes of
the legislative branch of the government, when they are
plain and free from doubt, is imperative.   We do not sit
as a court of review for the purpose of correcting legisla-
tive blunders; but it is our duty to enforce the laws that
the legislature enact.   The statute in question is clear,
express, and there is nothing in it to indicate that the
legislature intended to make the statute different from
what it is, unless this court is to say that, because the
day of sale is fixed on the same day that the deed is re-
quired to be filed, therefore the legislature did not intend
what it plainly says.   If this court should abandon the
first Monday of April as the day for the filing of the
deed, what date should the court fix?   Should it fix the
date of filing for the first Monday of May, and, if it did,
what is its authority for so doing?   Could the court say
that the deed must be filed in a reasonable time after
sale?   The legislature did not so say.   Any date that
this court might fix other than the day named by the leg-
islature would be arbitrary and an unwarranted act of
legislation.   If it be true that the legislature did not

intend to fix the day the day of sale and the day for
filing the deed for the same time, and that the doing of
this was a blunder, we answer that, while this may be
true, if the court should leave the plain terms of the
statute and undertake to enter the field of legislation
and fix the date of filing for a time that the court thought
was the proper time, the blunder of the legislature would
be followed by a calamity on the part of the court. The
court must follow, and not lead, legislation.

In the case of *Austin* v. *Cahill*, 99 Tex. 172, 88 S. W.
542, 89 S. W. 552, the court forcibly says: "The judi-
ciary, above all, on account of the peculiar position it
occupies in the construction and interpretation of law,
should scrupulously keep within its sphere, following the
ancient landmarks so far as adapted to modern condi-
tions, and avoiding always the reproach of undertaking
to legislate, directly or indirectly." Again, in the case
of *St. Louis & S. F. R. R. Co.* v. *Delk*, 158 Fed. 931, 86
C. C. A. 95, in speaking of the character of doubts and
difficulties which authorize the courts to enter the field
of the construction of statutes, the court said: "By
'doubts and difficulties' we, of course, do not mean those
which are engendered by the predilection of the court
or its own notions of what the law ought to be, but doubts
and difficulties which are inherent in the nature of the
problem to be solved. These propositions we presume
no one will deny, and it may be thought a work of super-
erogation to state them. But they are not always re-
membered by those who make unthinking haste to reach
what they believe to be a desideratum. Questions of
difficulty arise in the application of this statute. Some
of them have been solved or attempted to be solved
by the courts to which they have been presented.
The first rule of construction which occurs is that we
are to have regard to the scope and purpose of the stat-
ute, not so much the general purpose, as the immediate
purpose of this particular enactment; for, if we look too

intently upon some ultimate good we would wish to accomplish, we are very liable to distort the law or make out of it some other enactment than that which the legislature has in fact passed.''

The argument made by counsel that section 4332 of the Code provides for what, and for only what, tax conveyances may be avoided, has no application to this controversy. When the last of the above decisions in the two cases above cited was rendered, wherein it was held that the section of the Code requiring the filing of the deed, after the sale, with the chancery clerk was mandatory and if not followed the deed was avoided, the law was the same as it is now. Section 4332 deals with proceedings leading up to the sale, prior proceedings, and has no reference to dealing with the title after the sale is made. Section 79 of the Constitution of 1890, providing for the application by the court ''of the same liberal principles in favor of such titles as in sales by execution,'' is not to be invoked here. This section does not mean that the courts shall take from the citizen his property by virtue of a tax title admitted to have been dealt with in plain violation of the tax laws of the state. It does not mean that the court shall uphold a tax title by taking charge of the legislation of the state, and so amending a perfectly plain statute as to nullify what the legislature has said the statute shall be. It does not mean that the court shall adopt arbitrary rules of its own, and declare that the statute shall mean that, *''Ita lex scripta est,''* and so it shall remain.

But counsel argues that under the statute which required that lists of lands sold to individuals under Laws 1878, chapter 3, section 40, page 45, the tax collector was required to file with the chancery clerk separate lists of lands sold to individuals for taxes on or before the first Monday of April following the sale, and this court held in the case of *Wolfe* v. *Murphy,* 60 Miss. 1, that the failure of the collector to make and file with the clerk the

separate lists as required by section 40 of the act of 1878 was directory, and did not affect the title of the purchaser. It is therefore contended that, as the statute is similar in purpose with section 4338, the construction should be the same. To this contention there are two answers: First, the purpose of the statutes are not the same; second, in the two cases in 71 Miss. 150, 14 South. 462, and 78 Miss. 585, 29 South. 403, this court has construed them differently. The reason for the difference in the construction of these two acts is explained in the case of *Ferrill* v. *Dickerson,* 63 Miss. 211, when considered in the light of the case in 78 Miss. 585, 29 South. 403. In the *Dickerson case,* in 63 Miss., the court very properly says that the list required to be filed with the clerk of lands sold to individuals did not affect title in any way. The title to the purchaser passed by the deed and not the list. The list was intended only for purposes of convenience. In other words, the act of 1878, requiring lists of lands sold to individuals for taxes to be filed with the clerk, was designed for convenience in the subsequent official dealings with the lands. Section 40, act 1878, page 45, was not designed either for the benefit of the owner of the lands or purchaser at the tax sale. *Adams* v. *Mills,* 71 Miss. 150, 14 South. 462, and *Ferrill* v. *Dickerson,* 63 Miss. 211, clearly point out this distinction. This case is not without its difficulties growing out of the confusion that we find in the statutes. We find that by section 4328, as amended by Laws 1908, page 208, tax sales are required to be made on the first Monday of April, and that the deeds are required to be filed with the clerk under section 4338 on the same day and on no other, yet section 4328 gives the tax collector power to continue the sale from day to day, which, if the sheriff finds it necessary to do, must needs result in invalidating all sales for taxes after the first Monday of April, because, if made after that date, the deed could not be filed with the clerk on the date required by section 4338.

Fortunately all this confusion has now been harmonized by the legislature by amendment made by the Laws of 1908 and 1910. If the court should undertake to uphold this tax title, it would have to make the law under which it would be done and repeal a statute made by the legislature of the state, and we feel that this would be too great a departure from the true offices of a court.

*Affirmed.*

SMITH, J. (dissenting).

Section 3811 of the Code of 1892 provided that after the 15th of January the tax collector should advertise land on which the taxes were unpaid for sale on the first Monday of March following. Section 3813 provided that such sales should begin on the first Monday of March, and continue from day to day until completed. Section 3823 provided that the tax collector should file all conveyances of land sold to individuals in the office of the chancery clerk on or before the first Monday in April, there to remain for two years from the day of sale. When the Code of 1906 was adopted, all of these sections were brought forward without change so far as they relate to the matter here under consideration, except section 3811. See sections 4326, 4328, 4338, Code 1906. Section 3811 of the Code of 1892 was changed so as to provide that the land should be advertised for sale on the first Monday of April. A mistake, of course, was made in the Code of 1906 either in fixing the date of sale in section 4326 or in section 4328, and thus uncertainty and confusion was injected into a theretofore perfect scheme of procedure for the sale of land for taxes. In 1908, in order to remove this uncertainty and probably also because the legislature preferred the first Monday of April as the day for sale, chapter 199, acts 1908, was adopted, by which section 4328 of the Code of 1906 was amended so as to make the day of sale the first Monday of April, instead of the first Monday of March. This

change in the day of sale was the only change made in the section, the provision requiring the sale to be continued from day to day, if necessary, being retained. This section as amended is the last announcement of the legislative will upon the subject, and must be enforced, and all prior laws in conflict therewith are thereby repealed.

Turning now to section 4338, we find that that provision thereof which fixes the day on or before which the conveyances must be filed is in direct conflict with chapter 199 of the acts of 1908, for in no event can the conveyance now be filed with the chancery clerk before the first Monday in April, and certainly all of the conveyances cannot be filed on that day should the tax collector continue the sale from day to day, as he is required to do by the act of 1908. Even if the sale should last only one day, if the sales are numerous, it would be hardly possible for the conveyance to be executed and filed on the day of sale.

It therefore follows that the provision of section 4338, fixing the day on which the conveyances must be filed, was repealed by the adoption of chapter 199 of the acts of 1908. The remainder of the section, not being in conflict with the act of 1908, remains in full force (*Ex parte McInnis*, 54 South. 260), and the section must therefore be read as it stands, with the words ''on or before the first Monday of April'' eliminated. The statute, as thus necessarily amended by the act of 1908, still requires the filing of the conveyances, but it is silent as to when this must be done. The only real difficulty in the case is to determine within what time the conveyances must now be filed. For obvious reasons, these conveyances should be executed within a short time after the sale, but the main purpose of the statute was to provide a period of time within which the owners of the land sold might redeem it; and, in order that this right might be conveniently exercised, the conveyances were required to be

filed with the chancery clerk, there to remain until the period of redemption had expired. *Adams* v. *Mills,* 71 Miss. 152, 14 South. 462. In order that this right of redemption might be conveniently exercised, it is necessary that the conveyances should be filed as early as possible, so that they may be in the hands of the chancery clerk whenever an application to redeem is made; and for obvious reasons the tax collector should have a reasonable time in which to execute and file them. Such is clearly the intent of the legislature, even with the words "on or before," etc., eliminated from the statute.

What is a reasonable time is usually a mixed question of law and fact, to be determined from all the circumstances of each case; but in this instance it seems to me that what constitutes a reasonable time has been fixed by the uniform course of our legislation on the subject, since the Code of 1871, to be thirty days; or, to be more accurate, the time intervening between the day of sale and the first Monday of the succeeding month. See sections 1697 and 1701 of the Code of 1871, and sections 521, 531, Code 1880, and the sections of the Code of 1892 and 1906 hereinbefore mentioned.

For these reasons, I am unable to concur in the result reached by my brethren.