## STATE REVENUE AGENT *v.* THEODORE TONELLA.

1. ASSESSMENT FOR TAXATION. *Who may make.   Legislative power.*

    Assessment for taxation can only be made by the officer designated by law; and where the constitution devolves the duty of assessing upon a certain officer, the legislature cannot substitute another.

2. ASSESSOR. *Functions of.   Constitutional scheme.   Const.* 1890, §§ 112, 138.

    The constitution of 1890 (§ 112), in requiring that taxation shall be uniform and equal, and that assessment for taxation shall be under general laws and by uniform rules, according to value, contemplates that such assessment shall be made by the assessor provided for by § 138 thereof, selected for each county and having the well-known functions that have heretofore pertained to that office.

3. STATE REVENUE AGENT. *Assessment by. Code* 1892, *ch.* 126. *Constitutionality.*

    Chapter 126, code 1892, in so far as it provides that the state revenue agent may assess for *ad valorem* taxes property within this state that has escaped taxation, and may collect the taxes thereon, is a departure from the constitutional scheme of securing uniform and equal taxation through assessment by local assessors in each county, and is therefore unconstitutional.

FROM the circuit court of Warren county.

HON. J. D. GILLAND, Judge.

The opinion states the case. It will be observed that the decision has no reference to that part of § 112 of the constitution authorizing the legislature to provide for a special mode of valuation and assessment for railroads and other property not situated wholly in one county.

*Calhoon & Green,* for appellant.

To the argument that the power of assessing taxes is vested by the constitution in an assessor to be elected by the people, and that the legislature cannot vest it in another, we say:

1. The powers of the assessor and collector, vested by the constitution, extend only to the right of assessment and collection for the current fiscal year. In the absence of a statute, it is not the collector's duty to collect delinquent taxes. *State* v. *Harris,* 52 Miss., 686; *Foote* v. *Brown,* 60 *Ib.,* 155; *Cowart* v. *Foxworth,* 67 *Ib.,* 322. *A fortiori,* the rule would apply to assessors.

2. The constitution of 1890, adopted after these decisions, is silent as to the collection of delinquent revenue. The power previously exercised under statutes was thus impliedly recognized.

3. Legislative power over the person who assesses and collects current revenue has been increased by the constitution of 1890 in this, that they may now be appointed, or chosen in any way provided, whereas before they were elective. Const. 1890, § 138.

4. Under the constitution of 1869, the legislature had power

to provide for the performance of the duties of the assessor when he had failed to perform them as to current revenue. *Wolfe* v. *Murphy*, 60 Miss., 1; *Corburn* v. *Crittenden*, 62 *Ib.*, 125.

5. By § 513, code 1880, the collector could assess, even for the fiscal year, where the assessor failed to do so. *State* v. *Adler*, 68 Miss., 487. It is manifest that the legislature, under the constitution of 1869, could provide for the assessment of revenue made delinquent through the failure of the assessor. The clerk of a court is elective, but a deputy may do all his official acts. *McRaven* v. *McGuire*, 9 Smed. & M., 34 s.c. 23 Miss., 100. Even judges are created by statute to perform judicial duties which constitutional judges are unable to perform. *Grinstead* v. *Buckley*, 32 Miss., 148.

6. Unless the constitution prescribes another method, the legislature may provide for assessment of omitted property. Welty on Assessments, 36, 37, 197.

7. It was the duty of defendant to give in his property for taxation. Both he and the assessor are delinquents, and they cannot complain if their default caused the non-application of the constitutional scheme. The rights of the state alone remain to be cared for, and it may protect its revenue in any way it may see proper. *Vaughn* v. *Swayzie*, 56 Miss., 704.

8. Under the code of 1892, there can be no conflict of authority between the assessor and the revenue agent, as the latter deals only with property delinquent after the fiscal year. A party who is delinquent is not entitled to notice. If he is, suit is notice, and full opportunity is then given to him to be heard.

*R. H. Thompson*, on the same side.

1. It is argued that the constitution vests the power to assess and collect taxes in certain officers, and that the legislature cannot authorize this to be done by the revenue agent. To this I reply: The fundamental idea of all tax-laws is equality and uniformity. Failure by the citizen to render

his property for taxation violates this idea, and failure by the officers primarily charged with the duty of listing taxable property, likewise violates it. Tonella and his co-defendants have so acted as to deprive the state, county and city of revenue justly due. They cannot be heard to complain. Their conduct is contrary to good morals, and wrong. It has been decided that, under the law prior to the code of 1892, the only legal remedy in cases like this was against the bond of the delinquent officer. But this is changed by chapter 126, code 1892, which provides an instrumentality for securing the primary object of every section of the constitution pertinent to the subject of taxation. The question is, can the owner of taxable property wholly escape the burdens of government by procuring a failure of duty by the assessor and collector? If so, the taxes of the very rich need never exceed the penalty of the bond of these officers. I submit the remedy now provided is constitutional.

Assessment is a prerequisite, and property that has escaped assessment may be afterwards assessed. It is not necessary that this be done by the assessor. It has been decided the collector may assess in certain cases. The assessor, therefore, has not a monopoly of assessing. In *French* v. *State*, 52 Miss., 759, which this court, in *State* v. *Thibodeaux*, 69 Miss., 92, said held that the sheriff and tax-collector have rights which cannot be taken from them, did not involve any question of legislative power, but only the question whether a statute existed requiring a separate bond as tax-collector. Whatever rights the officer may have had, the failure to exercise them at the time required by law worked a waiver of them. The abstract question is, whether any officer has the right to prevent the state from collecting its revenue. Tonella has no such right, even if the officers have.

2. The statute under consideration does not deprive of property without due process of law. The legislature may provide for the assessment of taxes not paid in past years. See *Yazoo Railroad Co.* v. *Thomas*, 65 Miss., 553. Since it

is not denied the state may proceed through the assessor and tax-collector, no reason can be found why it cannot do so in any manner legislative wisdom may devise. Here we have the assessment, and the statute authorizing it. Surely the legislature may provide for the bringing of a suit for delinquent taxes. Such a remedy is provided by chapter 126, code 1892.

*Murray F. Smith* and *J. Hirsh*, for appellee,

Filed a brief and written argument, and, as to the question passed on by the court, making the following points: The power of the revenue agent is limited under any circumstances, as to tax-payers, to doing what the assessor or tax-collector has the power to do, and has failed to do. There is nothing in the revenue law to create, in favor of the revenue agent, a new scheme for the assessment and collection of taxes. There are certain officers created by the constitution— namely, the assessor and sheriff—upon whom are primarily imposed the assessment and collection of the revenue of the state and its subordinate divisions. We submit that no such power can be vested in any other officer.

Argued orally by *R. H. Thompson*, for appellant, and *Murray F. Smith* and *J. Hirsh*, for appellee.

COOPER, J., delivered the opinion of the court.

This is a suit by the revenue agent of the state, Wirt Adams, against Theodore Tonella, a resident of the city of Vicksburg, in the county of Warren, and Brennan and Sproules, sheriff and assessor of said county of Warren, and Keirsky, the assessor of the city of Vicksburg.

The declaration avers that, during the year 1891, the defendant, Tonella, was the owner of certain personal property, to wit, "notes, accounts and valid securities for loaned money," of the value of $7,200, which was subject to assessment, and liable to taxation for said year in said county and

city; that the levy for state and county taxes for the year
1891 was twelve mills on each dollar of taxable property,
and that for city taxes was twenty mills on the dollar; that
it was the duty of Tonella to return said credits for assess-
ment and taxation, and was also the duty of said assessors
and collector to have caused the same to be assessed accord-
ing to law, which they wilfully failed and neglected to do;
that in September, A.D. 1892, the plaintiff, as by law he was
authorized to do, assessed the said credits to the defendant,
Tonella, and reported the same to the proper officers, to be
by them noted on the assessment-rolls, and gave notice of
his action to Tonella. The plaintiff demanded judgment
against Tonella for $144, the amount claimed as taxes due to
the city of Vicksburg, and for $86.40 as state and county
taxes. He also demanded judgment against Brennan, the
sheriff, and Sproules, the county assessor, and Keirsky, the
city assessor, for the amount of the commissions to which
plaintiff would be entitled if successful in this suit.

The defendants demurred, and their demurrer having been
sustained, the plaintiff appeals.

The office of state revenue agent is created, or the statutes
relative to the same revised and amended, by chapter 126 of
the code of 1892. The first three sections of the chapter—
4187, 4188, and 4189—have relation to the creation, election
and qualification of the officer. The last nine sections relate
to the procedure by the agent to enforce the payment of
taxes after they have been imposed, or to other matters not
now necessary to review. The question involved in the pres-
ent suit arises from a consideration of §§ 4190, 4191, 4192
and 4193, which are as follows:

" SEC. 4190. After the expiration of the fiscal year in which
the taxes become due and payable, and that, too, whether
the taxes were assessed or properly assessed or not, the rev-
enue agent may assess and collect all past-due taxes, whether
the same be caused by the default of the assessor, tax-col-
lector or tax-payer; but if the revenue agent institute suit

against any person or corporation who has been correctly assessed, and the taxes so assessed paid, he shall be liable on his bond to such person or corporation for all costs and expenses incurred in defending such suits, if the judge will certify that the suit was frivolous, or that there was no ground for the action.

" SEC. 4191. It is the duty of the state revenue agent to investigate the books, accounts and vouchers of all fiscal officers of the state, and of every county, municipality and levee board, and to sue for, collect and pay over all revenue improperly withheld from either; and he has power, and it is his duty, to proceed against all such officers and their sureties by action to recover any such revenue; and it is his duty to proceed, by suit in the proper court, against all officers, persons, corporations, companies and associations of persons, for all past-due and unpaid taxes owing to the state, counties, municipalities and levee boards, whether *ad valorem*, privilege, license, poll or other, and whether assessed or properly assessed or not, if the fiscal year in which the same ought to have been paid have expired; and his duty to proceed by suit for the collection of any such taxes arises whether the failure to pay the taxes originated from the neglect or failure of any officer or board to perform his or its official duty, or from the failure of any person or corporation to fully give in his or its property to the assessor, or at a sufficient valuation, or otherwise. But his right and duty to collect money from a fiscal officer, where the delinquency appears by correct open account on the books of the proper accounting officer, shall only arise after he have given thirty days' notice to the officer to pay over the amount, and his failure to do so.

" SEC. 4192. It is the duty of the state revenue agent, when any person, corporation, property, business, occupation or calling liable to an *ad valorem* or privilege tax has escaped or shall escape taxation by reason of not being assessed or of not being demanded, or otherwise, to assess the same as the

tax-collector is authorized to do, and to collect and pay over the taxes thereon in like cases. He shall report all additional assessments, in writing, to the tax-collector, whose duty it will be to enter the same on the assessment-roll, as in case of an assessment by him, only he shall note that the assessment is made by the state revenue agent. The taxes on all such additional assessments may be recovered by the state revenue agent by action, if not paid within ten days after notice to the party assessed, if he be a resident of the state, or, if a non-resident, within ten days after the date of the assessments; and the proceedings may be against the person or property assessed, or both.

"SEC. 4193. The state revenue agent shall not assess taxes accruing prior to the year 1886; and in all cases the burden of proof shall be on the agent to show that the property or person was not assessed, or properly assessed; and the person assessed or re-assessed shall have ten days notice, in writing, before bringing suit. But when the revenue agent shall think property which has been assessed and approved by the board of supervisors, has been improperly assessed, he shall notify the board of supervisors, and summon the party assessed to appear before it for a rehearing. The board shall hear both parties, and decide the matter of difference, from which either party may appeal."

Section 112 of the constitution of 1890 declares as follows: "Taxation shall be uniform and equal throughout the state. Property shall be taxed in proportion to its value.   .   .   . Property shall be assessed for taxes under general laws, and by uniform rules, according to its true value."

Under the constitution of 1869, the provision was that "taxation shall be equal and uniform throughout the state. All property shall be taxed in proportion to its value, to be ascertained as directed by law." Art. 12, § 20.

By § 21, art. 5, of the constitution of 1869, it was provided: "A sheriff, coroner, treasurer, assessor and surveyor shall be elected in each county by the qualified electors thereof,

who shall hold their offices for two years, unless sooner removed." ·

Section 138 of the constitution of 1890, is as follows : " The sheriff, coroner, treasurer, assessor, surveyor, clerks of courts and members of the board of supervisors of the several counties, and all other officers exercising local jurisdiction therein, · shall be selected in the manner provided by law for each county."

The provisions of our revenue laws for the assessment of property for taxation (aside from those of chapter 126 of the code of 1892, now under consideration) have remained practically unchanged since the adoption of the code of 1871. Every person owning property subject to taxation is required to render a schedule thereof, with its value, under oath, and upon a form supplied by the assessor. If the property inventoried is, in the opinion of the assessor, undervalued, he is required to make report thereof to the board of supervisors, under oath, and he may add to his roll any property discovered by him not returned by the owner. At stated times, fixed by law, the board of supervisors meet to examine, correct, and equalize the assessments, and, this being done, they enter an order approving the rolls. Any person feeling himself aggrieved by any order of the board in reference to the assessment of property, may appeal to the circuit court. Two copies of the roll, as approved by the board, are then made by the clerk of the board, one of which is delivered to the collector and the other to the auditor, the original remaining in the office of the clerk. The roll delivered to the collector is the authority by which he collects the taxes levied. It is also provided by law that the collector may add to the roll any property he may discover as unassessed after the roll comes to his possession, making return of such additional assessment to the board of supervisors. If, at any time, the assessor shall discover that any person or property has escaped taxation in former years, it is his duty to assess the same, making due return thereof with his next assessment,

and giving the person who, or whose property, is thus assessed notice thereof, if he be a resident of the county.

The primary purpose in all just schemes of taxation is to distribute its burdens equally and uniformly upon all persons and property, and the requirement of our constitution that all property shall be taxed in proportion to its value, is but the statement in another form of the provision that taxation shall be equal and uniform. If all property was assessed at one-half or one-third its value, the rule of uniformity of taxation would not be disturbed. But the constitution, in providing for the office of assessor, and confining the officer to the territorial limits of his county, divided the state into as many taxing districts as there are counties; and since, if one rule of valuation should be adopted in one county and another in another, there would not be equality of taxation, it prescribed the standard of valuation for all property in all the counties should be the real value.

The office of assessor, spoken of in § 138 of the constitution, is one of known and settled functions, and in providing that an assessor should be selected, in the manner provided by law, for each county, it is to be presumed that the framers of that instrument intended to provide for the performance by him, substantially at least, of those duties which have hitherto pertained to his office. *French* v. *State*, 52 Miss., 760.

The constitution declares the rule of uniformity and equality of taxation; it fixes the standard of valuation by which that rule shall be preserved and enforced; it provides for the selection of an officer for each county to perform the duties of assessing persons and property. It is silent as to details, leaving to the legislature the power and duty of formulating the scheme of taxation, subject to the restrictions imposed by the general provisions it does contain.

Unquestionably, the constitution contemplates and requires an assessment of property as a condition of its taxation. Assessment is the listing and valuation of property liable to taxation according to law. It is essential for the apportion-

ment of all *ad valorem* taxes.  Cooley on Taxation, 259. And an assessment can only be made by the officer designated by law to make it.  Welty on Assessments, § 10. When the constitution devolves that duty upon a particular person, the legislature may not substitute another.  Welty on Taxation, § 10; *People* v. *Kelsey*, 34 Col., 473; *People* v. *Hastings*, 29 *Ib.*, 450; *People* v. *Sargent*, 44 *Ib.*, 434; *Houghton* v. *Austin*, 47 *Ib.*, 646; *Richmond & Danville Railroad Co.* v. *Commissioners*, 74 N. C., 506; *Railroad Co.* v. *Commissioners*, 72 *Ib.*, 10.

In *Houghton* v. *Austin*, above cited, the rule that the legislature could not devolve the duty of assessing property upon any other tribunal or officer than the assessor provided for by the constitution, was carried to the extent of annulling a law creating a state board for equalization of taxation among the several counties of the state.

It is said by counsel for appellant that the power of the legislature to devolve the duties of the assessor upon others has been recognized in many decisions of this court.  First, it is said that in *Wolfe* v. *Murphy*, 60 Miss., 1, the act of March 5, 1878, which provided that if the assessor should fail to complete his roll as required by law, the board of supervisors should "appoint some suitable person to make and complete such assessment-rolls, in the same manner as the assessor is required by law to do," was held to be a valid exercise of legislative power; and, second, that in *State* v. *Adler*, 67 Miss., 465, the authority of the collector to assess such persons or property as had been omitted by the assessor, as directed by § 513 of the code of 1880, was also upheld. It would be sufficient to reply that in neither of these cases was the validity of the legislation challenged by counsel or adverted to by the court.  But it is to be observed that the statutes construed in these cases have existed in this state since the year 1846 (Hutch. Code, pp. 185–189, §§ 9–23), and were in operation at the adoption both of the constitution of 1869 and of 1890.

The code of 1857 provided that, upon failure of the assessor to make and return his roll as required by law, the board should have power to remove him from office, and to appoint some suitable person to complete the roll; and in *Wolfe* v. *Murphy* this court assumed, without expressly deciding, that the effect of the act of 1878 was to authorize the board to declare the office vacant *pro tempore,* and to appoint an incumbent.

The provisions of the statute authorizing boards of supervisors to appoint a suitable person to make the assessment when the assessor has failed to discharge his duty, and conferring power on the sheriff to add persons or property to the roll which have been omitted by the assessor, are widely different in their scope, purpose and effect from the scheme provided by chapter 126 of the code in relation to the state revenue agent. They are provisions to meet emergencies, and displace as little of the machinery by which a general and uniform plan of assessment is carried on throughout the state as is possible. They substitute one local officer for another, and, in case of the appointed assessor at least, the duties he performs are precisely those which should have been performed by the assessor, and are subject to the same supervision by the board of supervisors. But chapter 126 of the code displaces the whole scheme of taxation. It substitutes a state officer, provided for by law, for the local officer designated by the constitution. All idea of equality and uniformity of taxation and of assessment of property " under general laws and by uniform rules, according to its true value," is abandoned, and the discretion of the officer is the limit of his power. Every judgment of every board of supervisors since the year 1886 is, in effect, nullified. Any citizen whose horse or cow or land or other property has been assessed in all these years, and who has paid his taxes according to such assessment, is subject to be proceeded against by the agent. It is, indeed, the imperative duty of the officer to proceed in all cases in which, in his opinion, the valuation

of property, as fixed by the tax-payer and the assessor and approved by the supervisors, was too little. Never before in the history of this state have such onerous duties been imposed upon, or such unlimited power vested in, a single person. We have said that all idea of equality and uniformity of taxation is abandoned. This is true, if the scheme is, in its nature, such that its practical operation must be effectual only in exceptional instances; for, if this be true, the law, though in form, is not in effect, a general law, prescribing uniform rules for the assessment of property of all the citizens of the state.

If the approval of values, as they have been fixed by the authorities charged with that duty, on all the rolls since the year 1886, could be nullified by the legislature, it would yet be necessary that any scheme in which no provision is made for preserving uniformity and equality of taxation would violate the constitutional provisions by which such equality and uniformity is declared. Now, if the revenue agent *may* proceed against any tax-payer whose property, in his opinion, has been undervalued, he *must* do so, unless his arbitrary discretion may be substituted for the legislative will. Nor can he proceed against one, and refuse to proceed against another standing in the same condition. But the agent cannot determine whether property has been undervalued in former years, unless he shall and can inform himself of its then condition and value, and this, being a matter of fact, must be decided upon some sort of evidence. No provision is, however, made for the investigation and decision of this preliminary fact, and the proceeding, when instituted, must rest upon the mere uninstructed discretion of the officer.

The question of value is one of the most difficult of solution in the administration of the law. One man may value an article at one price, and another at another, and another at another, and all be equally honest in their action. But it is also a relative question, for the value of one horse or cow or tract of land is largely determinable by the value of other

horses and cows and lands at the same time and place. When the agent proceeds to re-examine the value of property assessed in years past, no just conclusion could be reached without consideration of the property of others assessed on the same roll. If the valuation of the property of one man is increased, so also must be that of every other man, if it has been undervalued, otherwise the principle of uniformity and equality is departed from. It is to be remembered that in all the assessments which are reopened by the law under consideration, the boards of supervisors had been charged with the duty of examining and *equalizing* the rolls; and, if this was done, as must be presumed, any action by the revenue agent in changing one assessment would disturb the uniformity and equality of the burden, unless his jurisdiction may be considered as a revisory one, and his finding of the fact of undervaluation of particular property be considered as a judicial determination that all other property appearing thereon had been assessed at its true value.

It has long since been decided in this state that it is not within the legislative power to provide by retroactive legislation for the reopening of judgments final in their nature, and under which rights had become vested. *Hooker* v. *Hooker*, 10 Smed. & M., 599. *A fortiori*, can it not annul them by a mere legislative declaration.

When we consider the duty and power of the agent to collect taxes on property which has escaped taxation, the provisions of the law are found yet more objectionable. As to such property, the agent, without notice to the tax-payer, and without giving him an opportunity to be heard, determines that certain property of a certain valuation should be assessed against a particular person. He thereupon notifies the collector to place such property on the roll, and, having given the owner ten days notice of his action, may, in default of payment of the tax claimed, proceed by suit to recover the amount. It is true the act calls this an assessment, but it is not such in fact. No opportunity to be heard

in reference to the assessment is afforded to the citizen. His first information is that his property has been assessed by the *ex parte* act of the agent, and a liability fixed upon him upon which suit will be brought, unless immediate payment is made. He must, it is true, be summoned to defend the suit at law, and may then disprove the legality of the assessment, which becomes final against him only upon full hearing before the court. But the question is, not whether the assessment is conclusive against the citizen when the suit is brought, but it is whether he may be subjected to a suit at all unless a tax is due by him at the time, and whether a tax is ever due until assessment duly made in conformity to the constitution. Either what the agent does before suit brought is an assess-ment of the property, fixing liability for its taxes, which liability is the foundation and support of the suit at law, or there is no assessment at all preceding the suit, and the anomaly is presented of an action on a non-existing cause of action, with power in the plaintiff to create, pending the action, the right of action on which the suit rests.

We are not certain that we appreciate the precise position of counsel. The assumption runs throughout their briefs that a person owning property which has not been assessed, is a delinquent who cannot complain of any legislation having for its purpose the taxation of the property. Counsel do not expressly declare that such persons are not entitled to the protection of the constitution,.but they suggest that, having failed to obey the law by giving in their property for taxation when all other property was assessed, such delinquents should be left to be dealt with at the discretion of the legislature. But the fact that such persons may have violated the law, either by neglecting or wilfully refusing to return their property for taxation, is no reason why constitutional safeguards, provided for the protection of all classes, should be destroyed or ignored. The question is not one of policy, but of power; and, if it is competent for the legislature to dispense with an assessment of property as to one class, it would

be equally within its power to dispense with it for any or all other classes.

It is not too much to say that, if it were possible for one man to perform the duties of the office of revenue agent according to the provisions of the code, there are not enough courts in all the states to determine in a life-time the suits which would be brought in one year. But it is obvious that no purpose is disclosed of preserving the rule of uniformity and equality prescribed by the constitution. The evident purpose is to vest power in the agent to sue in the most flagrant instances of undervaluation of property heretofore taxed, or of non-assessment. Each case stands separate and distinct from each other, and, in lieu of the local agencies provided by the constitution, with local tribunals for equalization of values, the scheme of the act is to vest unlimited power and discretion in a state officer, with a trial by jury in each suit to finally settle the question of valuation. This is a total departure from the scheme of the constitution, and it is therefore invalid.

*The judgment is affirmed.*