# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2008-CA-01219-SCT

*AARCO OIL AND GAS COMPANY, HARRELL
ENERGY CORPORATION, GLENN G.
MORTIMER, III, ANNE MORTIMER
BALLANTYNE; DORCHESTER ROYALTY;
WHELESS INVESTMENT COMPANY; J.T.
TROTTER TRUSTEE OF THE JOSEPH SYDNEY
WHELESS, JR. 1974 TRUST, J.T. TROTTER,
EXECUTOR OF THE ESTATE OF ADA NANCE
WHELESS, PAIGE HOLLOWAY, SUCCESSOR
TRUSTEE OF THE PAIGE HOLLOWAY
TROTTER GST EXEMPTION, COMPASS BANK,
TRUSTEE OF THE BARBARA TROTTER
COLLINS GST EXEMPTION TRUST, FIELDING
L. COCKE, CAMILLE COCKE PATTON, AND
TAMARA C. JENKINS*

*v.*

*EOG RESOURCES, INC., WILLIAM WALLACE
ALLRED, BARBER MINERALS, INC., WILEY
FAIRCHILD FAMILY TRUST, JOHN M.
FAIRCHILD, MICHAEL B. MOORE AND LYNN S.
JONES IN THEIR CAPACITIES AS TRUSTEES
OF THE WILEY FAIRCHILD FAMILY TRUST;
AND FAIRCHILD-WINDHAM EXPLORATION
COMPANY, LLC*

| | |
|---|---|
| DATE OF JUDGMENT: | 06/26/2008 |
| TRIAL JUDGE: | HON. JOE DALE WALKER |
| COURT FROM WHICH APPEALED: | COVINGTON COUNTY CHANCERY COURT |

ATTORNEYS FOR APPELLANTS:      CAREY R. VARNADO
                               JEFFERSON D. STEWART
                               HOLMES S. ADAMS
                               BERNARD HESS BOOTH, IV
                               E. STEPHEN WILLIAMS
                               LINDSAY GREEN WATTS
                               JOHN SANFORD McDAVID
ATTORNEYS FOR APPELLEES:        C. GLEN BUSH
                               JOHN HART GEARY, JR.
                               GLENN GATES TAYLOR
                                LINDSEY McGEE TURK
                               JAMES L. QUINN
                               WATTS CASPER UELTSCHEY
                               JOSEPH ANTHONY SHERMAN, JR.
                               LAWRENCE CARY GUNN, JR.
NATURE OF THE CASE:            CIVIL - REAL PROPERTY
DISPOSITION:                   AFFIRMED - 10/29/2009
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE GRAVES, P.J., LAMAR AND KITCHENS, JJ.**

**KITCHENS, JUSTICE, FOR THE COURT:**

¶1.     Both the plaintiffs and the defendants claim ownership to the mineral rights of two tracts of land situated in Covington County. The plaintiffs brought suit in the Covington County Chancery Court, alleging that the defendants' interest in the property was derived from an invalid tax sale in 1942. The chancellor granted summary judgment in favor of the defendants, finding that the tax sale was valid, and the plaintiffs appealed.[1] Finding no error, we affirm the grant of summary judgment in favor of the defendants.

---

[1] Belhaven Production, LLC, and Little River Drilling, LLC, were the original plaintiffs, but were voluntarily dismissed on July 1, 2009, following a settlement agreement.

2

## I. Facts

¶2.    In 1940, the surface, and the minerals at issue, were owned by the State of Mississippi. On November 2, 1940, the state granted R.J. Graves a forfeited tax land patent to Tract 1 and granted J.D. Nobles a forfeited tax land patent to Tract 2. Graves and Nobles each sold all of their mineral interests in their respective tracts. On October 30, 1940, days before receiving his tax land patent, Graves conveyed a one-half mineral interest in Tract 1 to J.S. Wheless, Jr. Graves conveyed the other one-half mineral interest in Tract 1 to Aaron Cohen on November 2, 1940. Likewise, on October 29, 1940, Nobles conveyed a one-half mineral interest in Tract 2 to H. Guin Lewis, and a one-half mineral interest in Tract 2 to Jim H. Pugh. All four mineral deeds were recorded with the Covington County Chancery Clerk on or before December 28, 1940. These interests were transferred numerous times to various parties throughout the years, and all of these instruments of conveyance were recorded with the Covington County Chancery Clerk. The plaintiffs trace their title back to Cohen, Wheless, Pugh, and Lewis.

¶3.    However, on April 6, 1942, both tracts of land, including the mineral interests, were sold for unpaid 1941 ad valorem taxes, creating a second chain of title. Mrs. R.L. Windham acquired Tract 1, and Independent Trust Fund acquired Tract 2. Following the 1942 sale, the original owners had two years to reclaim their property and pay the past-due taxes, but neither tract was redeemed.[2]  Miss. Code § 9948 (1942). The mineral interests were

_____

[2]The chancery clerk issued Windham a deed covering Tract 1 on May 1, 1944, and a second deed on May 12, 1944. Both deeds listed different sale prices. Independent Trust Fund was also issued two deeds with different sale prices, one dated April 6, 1945, and one dated April 7, 1945.

eventually severed from the surface rights; the defendants trace their ownership in the mineral interests back to Windham and Independent Trust Fund.[3]

¶4.     On May 1, 2007, the plaintiffs filed this suit seeking to confirm and quiet title and also seeking a declaratory judgment that they were the rightful owners. The complaint alleged that one of the defendants, EOG Resources, Inc., had drilled a gas well on the property and was in the process of drilling a second well. The plaintiffs also sought damages for trespass, establishment of a constructive trust for any proceeds from the property, an accounting, and injunctive relief to prevent the defendants from distributing any proceeds or taking any action to interfere with their alleged interest in the property.

¶5.     The plaintiffs dispute the validity of the 1941 assessment of taxes and the subsequent 1942 tax sale. The defendants argue that the tax assessment and the sale were made in accordance with law, and therefore, they are the lawful owners. The defendants also asserted in the lower court that the plaintiffs' causes of action were barred by the statute of limitations, or, in the alternative, by adverse possession; but the defendants moved for summary judgment relying solely on the validity of their title. Following a hearing, the chancellor issued a ten-page judgment in favor of the defendants.

---

[3]Notably, several of the defendants were before this Court in 2001 in a case involving the same mineral interests at issue. In *Allred v. Fairchild*, 785 So. 2d 1064 (Miss. 2001), this Court held that Wallace Allred was entitled to the imposition of a constructive trust on mineral interests purchased by Wiley Fairchild. The plaintiffs were not parties to that action, and ownership was not disputed.

4

## II. Constitutional Issues

¶6.     Before addressing the underlying merits, we must first consider the defendants' arguments that any and all constitutional issues raised by the plaintiffs are procedurally barred because these issues were not adequately raised at the trial level and because the attorney general was not notified pursuant to Mississippi Rule of Civil Procedure 24(d)(2).

¶7.     First, the plaintiffs argue that because the 1941 assessment was not noticed and equalized by the Covington County Board of Supervisors, it was in violation of Article 4, Section 112 of the Mississippi Constitution. The defendants assert that the plaintiffs are attempting to have the entire statutory scheme declared unconstitutional, and therefore, were required to notify the attorney general under Mississippi Rule of Civil Procedure 24(d)(2). Rule 24(d)(2) provides,

> **(d) Intervention by the State.** In any action . . . (2) for declaratory relief brought pursuant to Rule 57 in which a declaration or adjudication of the unconstitutionality of any statute of the State of Mississippi is among the relief requested, the party asserting the unconstitutionality of the statute shall notify the Attorney General of the State of Mississippi within such time as to afford him an opportunity to intervene and argue the question of constitutionality.

The plaintiffs counter that they are not seeking to have any statute declared unconstitutional, rather, they are claiming that the statutes were applied in an unconstitutional manner. We agree. Because the plaintiffs are not seeking to invalidate a statute, Rule 24(d)(2) notification does not apply.

¶8.     Second, the plaintiffs argue that the mineral owners did not receive adequate notice of the tax sale sufficient to comply with the due process requirements of the federal and state constitutions. The defendants assert that the plaintiffs were too late in raising this issue and

5

should be prohibited from arguing it on appeal. This issue was never raised in the plaintiffs' response to the motion for summary judgment and was never argued at the May 21, 2008, hearing. However, at the close of the hearing on May 21, 2008, the chancellor reserved his ruling and granted the plaintiffs an additional thirty days to search for documents at the Mississippi State Tax Commission. On June 16, 2008, one of the plaintiffs' attorneys sent a letter to the judge raising the due process issue and quoting the United States Supreme Court case, *Mennonite Board of Missions v. Adams*, 462 U.S. 791, 103 S. Ct. 2706, 77 L. Ed. 2d 180 (1983). When the court reconvened on June 26, 2008, the chancellor allowed the plaintiffs to make their due process argument. The chancellor observed that he had read the *Mennonite* decision and that it did not change his opinion. He then instructed the defendants' attorneys to add language to that effect to the prepared order granting summary judgment. None of the defendants objected to this addition. Because the lower court addressed the due process issue relating to the 1942 tax sale, this Court is not prohibited from considering the issue on appeal.

### III. 1941 Supplemental Assessment

¶9.     Article 4, Section 112 of the Mississippi Constitution provides that "[t]axation shall be uniform throughout the State." To ensure uniformity, the legislature imposed upon boards of supervisors the duty to equalize tax assessments. Miss. Code Ann. § 27-35-131 (Rev. 2006). The code required the boards of supervisors to provide notice by publication to taxpayers of the right to inspect and examine the rolls once they had been equalized. Miss. Code § 3162 (1930). The board was required to hear taxpayer objections, if any, to the

6

assessments on the first Monday of August and make any necessary corrections. Miss. Code § 3165 (1930).

¶10. At the time of the 1941 assessment, real property rolls were examined and equalized every two years, and the next equalization was not to occur until 1942. Miss. Code §§ 3144, 3164 (1930). Thus, no equalization of the county's land assessment roll was authorized or required for 1941; this was accomplished when the roll was duly equalized for the 1940-1941 biennial period. The 1940 assessment did not assign a value to the land at issue because at the time it was owned by the state. Miss. Code § 3148 (1930). However, after the land became privately owned in November 1940, the tax collector was required to assess the land and add it to the land roll. Miss. Code § 3230 (1930). Tracts 1 and 2 were added to the land assessment roll, listing Graves and Nobles as the owners. There is no date on these entries, but a handwritten note at the top of the page states that "the following assessment is added to Roll by S.O. Herrington Sheriff & TC to be payed on for tax year 1941 and 42."[4]

¶11. The defendants assert that the land was taxed at a value consistent with the equalized and duly approved 1940-1941 assessment. The supplemental land assessment roll shows the assessed value at $4.00 per acre, the same value given all other lands in the Williamsburg school district, where the subject lands are situated.

¶12. The plaintiffs do not argue that the assessed value was excessive or that it was incompatible with the 1940-1941 assessment. Instead, they contend that the 1941 supplemental assessment was invalid merely because the roll was not equalized that year.

---

[4]At that time, the county offices of sheriff and tax collector were combined in Mississippi.

7

They assert that, without an equalization of the roll following the 1941 supplemental assessment, the procedure was violative of the constitutional requirement of "uniform and equal" taxation.

¶13.   However, the plaintiffs cite no authority for the proposition that the land assessment roll had to be equalized every year in order to ensure uniform and equal taxation.  They cite three cases in which this Court held that lack of notice to the public of the biennial land assessment renders the assessment invalid: *White v. Merchants & Planters Bank*, 90 So. 2d 11 (Miss. 1956); *Matthieu v. Crosby Lumber & Mfg. Co.*, 49 So. 2d 894 (Miss. 1951); *Berryhill v. Johnston*, 39 So. 2d 530 (Miss. 1949).  These cases do not support the plaintiffs' argument, as there is no dispute that the board of supervisors gave proper notice of the 1940-1941 land assessment, the assessment upon which the 1941 taxes were based.

¶14.   The plaintiffs also cite *Adams v. Tonella*, 70 Miss. 701, 14 So. 17 (1893), where this Court struck down a statute that permitted state revenue agents to audit local tax assessors' books, identify undervalued property, and then collect additional taxes on such properties. However, the problem in *Adams* was the unlimited and unchecked power of the revenue agents, who were permitted to "go behind assessment rolls which had been finally approved by the board of supervisors."  *State v. Wheatley*, 113 Miss. 555, 74 So. 427, 432 (1917) (citing *Adams*, 14 So. 17).  In the present case, a duly authorized local county official (the tax collector) performed his duty in accordance with the law and assessed the lands at a value consistent with the 1940-1941 assessment that had been approved by the board of supervisors.  His power was not unchecked and he did not "go behind" the properly approved assessment roll.

¶15.     The plaintiffs also assert that, because the land was assessed at no value in 1940, the land was exempt from taxation for a two-year period. To support this argument, the plaintiffs cite ***Long Bell Co. v. McLendon***, 127 Miss. 636, 90 So. 356 (1922). However, in ***Long Bell***, this Court struck down a "back assessment" because there had been no change in ownership from the state to an individual. In the present case, the lands became privately owned, and the law was clear that any state-owned lands became taxable the next year after they were sold to individuals. Miss. Code §§ 3121, 3145 (1930).

¶16.     It was the mineral owners' duty to ensure that their interests were separately assessed. Miss. Code § 3146 (1930); ***Clement v. Burns***, 373 So. 2d 790, 794 (Miss. 1979) (citing ***Stern v. Parker***, 200 Miss. 27, 25 So. 2d 787 (1946)).[5] If the owner of severed mineral rights did not fulfill this duty, and the surface owner failed to pay the assessed taxes, the state was permitted to sell the land, including the severed mineral rights, at a tax sale. ***Clement***, 373 So. 2d at 794. In this case, nothing in the record indicates that Cohen, Wheless, Pugh, or Lewis had his interest separately assessed. Thus, when Graves and Nobles failed to pay taxes, the state lawfully sold the entire estate, including the mineral interests, to Windham and Independent Trust Fund.

**IV. 1942 Tax Sale**

---

[5]Beginning in 1947, nonproducing mineral interests that were owned separately from the land surface became exempt from ad valorem taxes. Miss. Code Ann. § 27-31-73 to § 27-31-87. (Rev. 2006). However, prior to 1947, separately owned mineral interests were taxed in the same manner as surface interests. Miss. Code § 3146 (1930); Miss. Code § 9770 (1942).

9

¶17.    The plaintiffs also argue that the 1942 tax sale was invalid because the county did not provide notice to the mineral owners, either by mail or by personal service, in violation of federal and state due process requirements.  U.S. Const. amend. XIV; Miss. Const. art. 3, § 14.  The statutes in effect at the time required that the tax collector advertise all lands to be sold for delinquent taxes in a county newspaper for three weeks.  Miss. Code § 9921 (1942).[6]  Before the two-year redemption period expired, the statutes required that the owners be personally served with notice, but only if they resided within the state.  Miss. Code §§ 9941-42 (1942).  Out-of-state residents were to receive notice by mail, but only if their addresses were known or could "be ascertained after diligent inquiry."  Miss. Code § 9942 (1942).  Because Graves and Nobles were residents of Mississippi, the law required that they be served personally before the expiration of the redemption period, but the county was not required to notify the owners of the severed mineral interests.  Miss. Code §§ 9941-42 (1942).

¶18.    There is no evidence in the record that the tax sale was advertised as required by statute.  In addition, while the land roll indicates that Graves and Nobles were given some form of notice before the expiration of the redemption period on January 15, 1944, the roll does not specify that Graves and Nobles were personally served.[7]  However, given the presumption that public officials perform their lawful duties, in absence of evidence to the

_____

[6]Although there is no evidence in the record, the parties do not dispute that the sale was properly advertised.

[7]The defendants assert that Graves and Nobles were given notice via registered mail. The plaintiffs correctly point out that it was the lienors and not the owners who received notice via registered mail.

10

contrary, we may presume that the tax sale was properly advertised and that Graves and Nobles were given personal service prior to the expiration of the redemption period. *Frazier v. State By and Through Pittman*, 504 So. 2d 675, 712 (Miss. 1987).

¶19. The plaintiffs argue that, even if the county followed statutory requirements, publication of the sale and notice to the surface owners was insufficient to satisfy the due process rights of the mineral owners. To support their argument, the plaintiffs point to evidence that two of the four owners of the severed mineral interests paid taxes from 1942 onward. After the statutes were amended in 1946 to allow an exemption for mineral interests, both individuals purchased the required documentary stamps and affixed those stamps to their mineral deeds. Miss. Code Ann. § 27-31-71 to § 27-31-87 (Rev. 2006). The plaintiffs assert that it was therefore reasonable for the county to notify these individuals about the tax sale and the need to redeem their property.

¶20. The defendants counter that their predecessors in title also paid taxes on the same mineral interests. They note that, although the plaintiffs' predecessors in title were identified by name in mineral deeds, there was no indication of their addresses, and they neglected to have their minerals separately assessed in 1941.

¶21. Although the plaintiffs cite both the federal and the state constitutions, they rely primarily on two United States Supreme Court decisions which postdate the 1942 tax sale, *Mullane v. Central Hanover Bank & Trust Company*, 339 U.S. 306, 70 S. Ct. 650, 94 L. Ed. 865 (1950), and *Mennonite Board of Missions v. Adams*, 462 U.S. 791 (1983). The defendants argue that these decisions should not be applied retroactively, and cite cases from West Virginia and New York's supreme courts which refused to apply the *Mennonite*

11

decision retroactively. *Geibel v. Clark*, 408 S.E.2d 84 (W. Va. 1991); *McCann v. Scaduto*, 519 N.E.2d 309, 404 (N.Y. 1987). These decisions relied in part on the effect such retroactive application might have on existing property rights. However, the United States Supreme Court has made clear since these two decisions that, "[w]hen this Court applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate our announcement of the rule." *Harper v. Virginia Dep't. of Taxation*, 509 U.S. 86, 97, 113 S. Ct. 2510, 125 L. Ed. 2d 74 (1993). In both the *Mullane* and *Mennonite* decisions, the Court applied the new rule to the parties before it. Thus, we are bound to apply these decisions to today's case.[8]

¶22. *Mullane* and *Mennonite* discuss the manner and extent of notice that is required before a state may take an action which will affect a protected interest in life, liberty, or property. The cases hold that the Due Process Clause of the Fourteenth Amendment requires "notice reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mennonite*, 462 U.S. at 795 (quoting *Mullane*, 339 U.S. at 314). Regarding notice by publication, the Court observed that "[c]hance alone brings to the attention of even a local resident an advertisement in a small type inserted in the back pages of a newspaper, and if he makes his home outside the area of the newspaper's normal circulation the odds that the information will never reach him are large indeed." *Id*. (quoting *Mullane*, 339 U.S. at 315).

---

[8]On questions involving the application of state law, this Court is free to apply its own retroactivity doctrine. *Harper*, 509 U.S. at 100.

The Court also noted that "[b]ecause they are designed primarily to attract prospective purchasers to the tax sale, publication and posting are unlikely to reach those who, although they have an interest in the property, do not make special efforts to keep abreast of such notices." *Id.* (citations omitted).

¶23.    However, the Supreme Court did not hold that actual notice was necessary in every instance. "We do not suggest, however, that a governmental body is required to undertake extraordinary efforts to discover the identity and whereabouts of a mortgagee whose identity is not in the public record." *Id.*, 462 U.S. at 798 n. 4. The Court had recognized that publication may suffice to notify those individuals "whose identity or whereabouts [can] not with due diligence be ascertained." *Mullane*, 339 U.S. at 659. "[W]hether a particular method of notice is reasonable depends on the particular circumstances." *Tulsa Prof'l Collection Servs., Inc. v. Pope*, 485 U.S. 478, 484, 108 S. Ct. 1340, 1344, 99 L. Ed. 2d 565 (1988).

¶24.    When confronted with a situation similar to the one before us in the present case, the Fifth Circuit Court of Appeals held that "a search of the conveyance records to identify parties with mineral interests would be unduly burdensome and is a task beyond the routine examination of land records that was involved in *Mennonite*." *Davis Oil Company v. Mills*, 873 F.2d 774 (5th Cir. 1989) (citing *Bender v. City of Rochester, NY*, 765 F.2d 7 (2nd Cir. 1985)). In *Davis Oil*, the holder of a mineral lease sought to invalidate a judicial sale of land on due process grounds because he was never given actual notice of the sale. *Id.* The Fifth Circuit Court of Appeals examined the *Mennonite* and *Mullane* decisions and determined that constructive notice of the sale did not violate notions of due process because it would

13

be "extremely cumbersome" to comb through the land records to identify those who might have a mineral interest in the property. *Davis Oil*, 873 F.2d at 789. The court recognized that the lessee easily could have assured that he would have received notice of the sale had he paid a nominal fee and placed his name and address on file in the mortgage records. *Id.* at 790-91. Although failing to do so would not constitute a waiver of the lessee's constitutional right to due process, the availability of a means to protect his property interest was a factor to be considered when determining whether his identity was reasonably ascertainable. *Id.* at 789-90.

¶25. Likewise, the defendants assert that the plaintiffs' predecessors in interest could have protected their interests had they undertaken the duty to assure that their severed mineral interests were separately assessed for 1941 taxes. Following the reasoning from *Davis Oil*, the tax assessor was under no obligation to comb the land records to identify individuals who might appear to have an interest in the land's minerals. Therefore, publication and notice to the surface owners only, under the circumstances, did not violate the mineral owners' due process rights.

### V. Conclusion

¶26. The plaintiffs' arguments, though well presented, are without merit. Ad valorem taxes were assessed for 1941 in compliance with applicable law, and the board of supervisors was under no obligation, either by statute or constitution, to equalize the land roll in that year. In addition, because the identity and whereabouts of the owners of the severed mineral interests were not readily ascertainable, publication and notice to the surface owners were

sufficient to satisfy due process.  For the foregoing reasons, the judgment of the Covington County Chancery Court is hereby affirmed.

¶27.    **AFFIRMED**.

**CARLSON AND GRAVES, P.JJ., DICKINSON, RANDOLPH, LAMAR, CHANDLER AND PIERCE, JJ., CONCUR. WALLER, C.J., NOT PARTICIPATING.**